**In re The NATIONAL SUGAR REFINING COMPANY, Debtor.**

**The NATIONAL SUGAR REFINING COMPANY, Appellant,**

v.

**C. CZARNIKOW, INC. and Bankers Trust Company, Appellees.**

**No. 82 CIV 5188 (LBS).**

United States District Court, S.D. New York.

Jan. 28, 1983.

Finley, Kumble, Wagner, Heine, Underberg & Casey, Daniel A. Zimmerman, New York City, for appellant.

Zalkin, Rodin & Goodman, Andrew D. Gottfried, New York City, for C. Czarnikow, Inc.

Moses & Singer, Richard W. Brewster, New York City, for Banker Trust Co.

## OPINION

SAND, District Judge.

Appellant National Sugar Refining Company appeals from an order of United States Bankruptcy Court Judge Edward J. Ryan, dated September 21, 1981, and from an oral order of the same court, dated November 9, 1981. Briefly stated, the September 21st order determined that appellee, C. Czarnikow, Inc. ("Czarnikow"), an unpaid seller of raw sugar to appellant, was entitled to exercise its right of stoppage in transit upon appellant's insolvency. The order also stated that Czarnikow had the

right to dispose of the sugar in a commercially reasonable manner and to retain the proceeds pending the bankruptcy court's determination as to whether Bankers Trust Company ("Bankers"), an alleged secured creditor of appellant, or Czarnikow had a superior right to such proceeds. The November 9th order denied appellant's motion pursuant to rule 923 of the Rules of Bankruptcy Procedure for reconsideration of the September 21st order. This Court's jurisdiction is founded on 28 U.S.C. § 1334.

## I. FACTS

■ Appellant purchased 6,550 long tons of raw sugar from Czarnikow pursuant to two contracts dated August 12, 1981 and August 26, 1981, both of which called for September delivery. On August 27, 1981, Czarnikow advised appellant that 6,550 tons of sugar then on board the vessel M/V Edispsos and for which Czarnikow held the negotiable bill of lading would be used to fulfill its obligations under the two contracts. At that point, title to the sugar passed from Czarnikow to appellant.

On September 3, 1981, appellant filed a Chapter 11 petition pursuant to the Bankruptcy Reform Act of 1978, 11 U.S.C. (the "Bankruptcy Code" or "Code") § 1101 *et seq.* in the United States Bankruptcy Court for the Southern District of New York.

On September 11, 1981, Czarnikow applied to the bankruptcy court and obtained on even date an order requiring appellant to show cause why it should not be required to assume or reject the two "executory" sugar contracts forthwith and, if the contracts were assumed, why appellant should not be required to provide Czarnikow with adequate assurance of payment. Czarnikow's application further stated that it was exercising its right of stoppage in transit pursuant to Uniform Commercial Code ("UCC") §§ 2–702(1), 2–705(1).

On the same date, Bankers applied to the bankruptcy court and obtained an order requiring appellant and Czarnikow to show cause why the sugar should not be sold on the open market and the proceeds paid into the court pending resolution of which party had superior rights to the proceeds. The court scheduled a hearing for September 16, 1981 on both Czarnikow's and Banker's applications.

Appellant's answer and counterclaim to the Czarnikow application, filed September 16, 1981, asserted that the contracts were nonexecutory; that Czarnikow had no right of stoppage in transit; that the sugar should immediately be delivered to appellant; and that Czarnikow was restrained by the automatic stay provisions of Code § 362 from interfering with delivery of the sugar.

Appellant also filed on September 16 an answer to the Czarnikow application setting forth several affirmative defenses and counterclaims against Bankers as well as crossclaims against Czarnikow whereby appellant asserted that its interests in the sugar were superior to those of both Czarnikow and Bankers. Appellant further alleged also that it could pursuant to Code § 361 provide adequate protection to Czarnikow as to payment for the sugar, in the form of substitute liens on appellant's unencumbered property.

The evidence presented to the bankruptcy court at the September 16th hearing was the testimony of appellant's president, relative to the four points which the court directed appellant to establish: the possibility of a successful reorganization of appellant; appellant's need for the sugar for its operations; the expense and inconvenience to appellant in obtaining replacement sugar; and the adequacy of the indemnity appellant proposed to give to Czarnikow and Bankers. The hearing was adjourned to September 18, 1981, by which time the parties filed memoranda of law. After asking the parties if they had fully presented their cases on the issue of Czarnikow's right of stoppage in transit, and receiving affirmative responses from Czarnikow and Bankers and no response from appellant, the court held that Czarnikow had the right to stop the sugar in transit and approved a stipulation previously entered into by Czarnikow and Bankers providing for the sale of the sugar and a subsequent determination of rights between the two as to the proceeds.

Transcript of Hearings of September 18, 1981, at 110. A proposed order to effectuate the ruling of September 18 was submitted to and signed by the court on September 21, 1981, to which appellant objected on the grounds that the order should have allowed appellant the opportunity to litigate with Bankers and Czarnikow over the proceeds of the sugar. On November 9, 1981, the court by oral order denied appellant's motion to reconsider the September 21 order, and the instant appeal ensued.

Appellant and Czarnikow have submitted briefs, appeared before the Court for oral argument, and filed supplemental memoranda. Bankers has indicated by letter to the Court that it will not submit briefs on this appeal.

## II. ISSUES

The central issue presented herein, one of apparent first impression, is whether Czarnikow's exercise of its right of stoppage in transit, under UCC § 2–702(1), subsequent to appellant's filing of a petition in bankruptcy constituted the creation of a "statutory lien" avoidable by the trustee or debtor-in-possession[1] under Bankruptcy Code § 545 or resulted in the creation of interest in the sugar in favor of Czarnikow subordinate to the rights of appellant under Bankruptcy Code § 544(a) and UCC § 9–301.

The second issue raised by appellant is whether Czarnikow's post-petition exercise of its right of stoppage violated the automatic stay provisions of Code § 362(a) and was accordingly void.

Finally, appellant argues that the bankruptcy court erred in adversely determining appellant's rights to the sugar with no motion pending for summary judgment or to dismiss the pleadings and with no or insufficient evidence presented by Czarnikow establishing its entitlement to the sugar.

We consider each of these issues below.

## III. DISCUSSION

### A. *Stoppage of Goods in Transit*

#### 1. *Generally*

Section 2–702(1) of the Uniform Commercial Code provides:

"Where the seller discovers the buyer to be insolvent he may refuse delivery except for cash including payment for all goods theretofore delivered under the contract, and stop delivery under this Article. . . ."

*See also* UCC § 2–705(1) ("The seller may stop delivery of goods in the possession of a carrier or other bailee when he discovers the buyer to be insolvent. . . .").

The right accorded a seller of goods pursuant to this provision is premised on the inequity of permitting the buyer to obtain possession of goods when there has been a prospective failure of the buyer's performance. When the buyer is insolvent and thus impaired in fulfilling its contractual obligation to pay, the seller rather than deliver the goods and seek to recover on the price, *see* UCC §§ 2–709(1), 2–607(1), may withhold or stop in transit the delivery of the goods—*i.e.,* suspend his performance, *see* UCC § 2–705 Comment 1—until and unless he is assured of the buyer's payment in cash upon delivery, even though the contract may call for the extension of credit. *See* 3A R. Dusenberg & L. King, *Sales & Bulk Transfers under the Uniform Commercial Code* § 13.03[2], at 13–12 (1982).[2] This

---

1. A debtor-in-possession, such as appellant, is clothed with all the "avoiding" powers of a trustee, 11 U.S.C. § 1107(a). Accordingly, the two terms are used interchangeably in the text.

2. Czarnikow attempts to attach significance to its assertion that at no time did it instruct the Edipsos to deliver the sugar to appellant. *See* Brief of Appellee C. Czarnikow, Inc., at 3, 9. Even assuming the assertion as a fact, however, Czarnikow gains little: its actions would then constitute "withholding delivery", rather than stoppage in transit, the consequences of which under the UCC are precisely the same. *See* 3A R. Dusenberg & L. King, *Sales & Bulk Transfers under the Uniform Commercial Code,* § 13.03[3], at 13–16 (1982); see also UCC § 2–702 Comment 6 ("After effective stoppage under this section, the seller's rights . . . are the same as if he had never made a delivery."). Moreover, because in either depiction of the events, there is no dispute that title passed to the appellant on August 27, 1981 and was thus part of the bankrupt's estate as of the petition

right persists so long as the goods are in the hands of a carrier or any other bailee not holding for the buyer and is cut off by the buyer's attainment of actual or constructive possession. *See* UCC § 2–705(2).

■ The fact that Czarnikow had passed to appellant title to the sugar did not affect the former's right to stop in transit. As one commentator notes, "Under strict legal terminology, the right to stop goods where title has *not* passed should not be called stoppage *in transitu*. The vendor's rights are then much greater." 4A *Collier on Bankruptcy* ¶ 70.40, at 481 n. 2 (14th ed. 1978). *See also* UCC § 2–401; 78 C.J.S. *Sales* ¶ 403.

### 2. *Bankruptcy Code § 545*

Appellant asserts, however, that Czarnikow's stoppage in transit constitutes a statutory lien avoidable under Code § 545.

Section 545 provides, in relevant part: "Statutory liens. The trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien—

(1) first becomes effective against the debtor—

. . . .

(D) when the debtor becomes insolvent;

. . . .

(2) is not perfected or enforceable on the date of the filing of the petition against a bona fide purchaser that purchases such property on the date of the filing of the petition, whether or not such a purchaser exists. . . ."

11 U.S.C. § 545(1)(D), (2).

A "statutory lien" is defined in the Bankruptcy Code as a

"lien arising solely by force of a statute on specified circumstances or conditions, or lien of distress for rent, whether or not statutory, but does not include a security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute or whether or not

such interest of lien is made fully effective by statute;" 11 U.S.C. § 101(38).

Appellant maintains that the exercise of the right of stoppage in transit pursuant to UCC § 2–702(1) merely confers a vendor's lien upon the seller. In support of this position, appellant cites the following commentary:

"When delivery of goods is rightfully stopped by the seller, he is thereby revested with a lien in the same way as if possession of the goods had never been surrendered. The sale is not cancelled; if title had passed to the buyer . . . it remains in the buyer unless the seller thereafter makes a proper cancellation by virtue of the [Uniform Commercial] Code § 2–703."

2 Anderson, *Uniform Commercial Code* § 2–705:28, at 371 (2d ed. 1981); *see also id.* § 2–703:8, at 338. To the same effect, one treatise states:

"Prior to the Uniform Commercial Code . . . . the seller's right to withhold would not be dependent on his title in the goods, but he would be granted a seller's lien on the goods until payment of the purchase price. The seller's lien is nowhere mentioned in Article 2 of the Code and as a legal device it is omitted and presumably no longer exists. The consequences of it, however, are retained by the Code."

3A R. Dusenberg & L. King, *Sales & Bulk Transfers under the UCC* § 13.03, at 13–14 (1982) (emphasis supplied; footnote omitted). Because the right of stoppage in transit and the "lien" resulting from the exercise of such right become effective under UCC § 2–702(1) only at the time of the buyer's insolvency, appellant asserts that as a debtor-in-possession, it may avoid the "lien" under § 545(1).

### 3. *The Strong-Arm Clause*

Appellant further contends the interest created by Czarnikow's post-petition exercise of its right of stoppage in transit is subordinate to the rights of appellant under

date, we are of the view that under Bankruptcy Code §§ 545, 544(a), it is immaterial whether

Czarnikow literally stopped the goods in transit.

Bankruptcy Code § 544(a)(1) and UCC § 9–301.

Section 544 states:

"Trustee as lien creditor and as successor to certain creditors and purchasers.

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained a judicial lien, whether or not such a creditor exists . . . ."

This provision, "justly and characteristically termed the 'strong-arm clause'", 4 *Collier on Bankruptcy* ¶ 544.01, at 2 (15th ed. 1980), clothes the appellant, as a debtor-in-possession, with the powers accorded a hypothetical creditor of the debtor who at the time of the filing of the petition had completed the legal (or equitable) processes for perfection of a lien upon the debtor's property. *See id.,* at 4–5.

UCC § 9–301 is consistent with the above provision and provides, in pertinent part:

"Persons Who Take Priority Over Unperfected Security Interests; 'Lien Creditor'

(1) Except as otherwise provided in subsection (2), an unperfected security interest is subordinate to the rights of

. . . .

(b) a person who becomes a lien creditor without knowledge of the security interest and before it is perfected;

. . . .

(3) A 'lien creditor' means a creditor who has acquired a lien on the property involved by attachment, levy or the like and includes an assignee for benefit of creditors from the time of assignment, and a trustee in bankruptcy from the date of the filing of the petition or a receiver in equity from the time of appointment."

Thus, argues appellant, under both Bankruptcy Code § 544(a) and UCC § 9–301(1)(b), a determination of the respective rights of appellant and Czarnikow to the sugar and the proceeds thereof must be based upon a comparison of those rights as of the date on which the petition was filed. Because as of that date appellant had the rights of a perfected lien creditor, and Czarnikow, not yet having stopped the sugar in transit, had the rights merely of an unsecured creditor, appellant contends that its right to the sugar and to the proceeds from its sale, *see* UCC § 9–306 (security interest in collateral continues into proceeds thereof), were and continue to be superior to those rights of Czarnikow.

### 4. *Relevancy of Code § 546(c)*

We are of the opinion, however, that appellant's arguments under both Code §§ 545 and 544(a) neglect the significance of Bankruptcy Code § 546(c) which states:

"Limitations on avoiding powers

. . . .

The rights and powers of the trustee under sections 544(a), 545, 547, and 549 of this title are subject to any statutory right or common-law right of a seller, in the ordinary course of such seller's business, of goods to the debtor to reclaim such goods if the debtor has received such goods while insolvent . . . ."

The legislative history of this section expresses its purpose:

"[§ 546(c) ] specifies that the trustee's rights and powers under the strong arm clause, the successor to creditors provision, the preference section, and the postpetition transaction section are all subject to any statutory or common-law right of a seller, in the ordinary course of business, of goods to the debtor to reclaim the goods if the debtor received the goods on credit while insolvent . . . . The purpose of the provision is to recognize, in part, the validity of section 2–702 of the Uniform Commercial Code, which has generated much litigation, confusion, and divergent decisions in different circuits."

H.R.Rep. No. 595, 95th Cong., 1st Sess. 371–372 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 86–87 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6327.

In light of this provision's denial of the avoidance powers conferred on a trustee under Bankruptcy Code §§ 544(a) and 545 as against a seller who delivers goods and then reclaims, we find it hardly likely that Congress intended to grant these very same powers as against a seller who succeeds in "reclaiming" the goods *prior* to delivery, by means of stopping them in transit.[3] In both instances, the property interest of the buyer in the goods that is affected by the post-petition acts of the seller is the same, namely, defeasible title. *See* 2 Anderson, Uniform Commercial Code, *supra,* § 2–705:28, at 371. There appears no rationale either in the legislative history or in case law construing UCC § 2–702(1) and the statutory antecedents to Code §§ 544(a) and 545, and appellant has suggested none, for holding that a seller's acts pursuant to UCC § 2–702(2) do not constitute the creation of a statutory lien, while those under UCC § 2–702(1) do.

Indeed, adoption of appellant's position would result in the anomaly of placing an unpaid seller who had withheld from the buyer constructive possession of the goods in a worse condition than one who has transferred such possession to the buyer, and would suggest that Czarnikow should have engaged in the rather absurd behavior of proceeding to deliver the goods to appellant and immediately thereafter issuing a written demand for reclamation pursuant to Code § 546(c).

Congress' silence in Code § 546(c) on the validity in bankruptcy law of a seller's right of stoppage in transit does not, as appellant

argues, compel by negative implication a determination that Congress intended to subject such right to the trustee's avoidance powers. The more probable explanation for this silence lies in the apparently complete absence of case law, noted by both parties, suggesting that the seller's exercise of rights under subsection (1) of UCC § 2–702 constitutes the creation of a statutory lien or of lienor's rights junior to those enjoyed by the debtor-in-possession as a hypothetical lien creditor.

The lack of judicial consideration of UCC § 2–702(1) as creating a statutory lien or a subordinate security interest is paralleled by the secondary authorities on the subject. For example, one treatise, discussing the statutory antecedent of the Bankruptcy Code and the avoidance powers conferred therein on the trustee, states without qualification:

"The bankruptcy courts recognize and give effect to the doctrine of stoppage *in transitu.* . . .

. . . .

So far as the effect of bankruptcy is concerned, the right of stoppage *in transitu* may be exercised by a vendor where goods are shipped to a person who, unknown to the shipper, had gone into bankruptcy prior to the delivery of the goods to the carrier, or who went into bankruptcy while the goods were in transit."

4A *Collier on Bankruptcy* ¶ 70.40, at 481 (14th ed. 1978) (footnotes omitted). *See also Buss v. Long Island Storage Warehouse,* 64 F.2d 338 (2d Cir.1933) (L. Hand, J.). By contrast, the issue of UCC § 2–702(2) and its interrelationship with the trustee's avoidance powers under the for-

---

**3.** Apparently, one treatise writer has assumed the position that the statute itself excepts from the trustee's avoidance powers a seller's right of stoppage in transit, a position justified by construing the statute to encompass a right to reclaim title, as well as the goods themselves.

"*As long as the seller makes written demand for the goods within ten days of or prior to receipt by an insolvent debtor,* the trustee may be subject to any statutory or common law right to reclaim."

**4** *Collier on Bankruptcy* § 546.01, at 546–4 (15th ed. 1980) (emphasis added). Of course, the seller cannot make a demand, written or otherwise, for goods that are not in the debtor's possession and, accordingly, the above-quoted statement should perhaps be read as requiring that a seller exercising a right of stoppage give written notice of same. Assuming such a requirement to exist, Czarnikow's filing of the Order to Show Cause on September 11, 1981 is fully adequate in this regard.

mer bankruptcy statute was marked by "much litigation, confusion, and divergent decisions in different circuits", *see* H.R.Rep. No. 595, *supra;* S.Rep. No. 989, *supra,* which prompted Congress to enact Code § 546(c). Accordingly, congressional silence regarding the seller's right of stoppage in transit as against the trustee's avoidance powers should be considered, if at all, more in the nature of an approval of the harmonious precedent in favor of the seller's right of stoppage rather than a disavowal by omission.[4]

▉ In summary, if, as appellant contends, stoppage in transit revests the unpaid seller with a vendor's lien, surely reclamation is to the same effect. Congress' determination, as expressed in Code § 546(c), that the latter should not be countermanded by the Bankruptcy Code's statutory-lien provision or strong-arm clause persuades us that Congress would likewise have recognized the validity of a seller's right of stoppage as against a debtor-in-possession had the matter been placed in issue. Accordingly, the bankruptcy court correctly ruled that Czarnikow possessed the right to stop the delivery of the sugar in transit.

## B. *The Automatic Stay*

Appellant further contends that Czarnikow's stoppage of the goods in transit violated the automatic stay provisions set forth in 11 U.S.C. § 362(a) and was accordingly "void and without effect".

Code § 362(a) provides, in pertinent part:

"[A] petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities of—

. . . .

(3) any act to obtain possession of property of the estate or of property from the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate; [or]

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title. . . ."

Having concluded on the basis of the reasoning set forth above that under the Bankruptcy Code a seller has the right of stoppage in transit, we view appellant to be contending here that prior to exercising such right, Czarnikow must first have applied to the bankruptcy court for relief from the automatic stay pursuant to Code § 362 and Rule 11–61(a)(5) of the Rules of Bankruptcy Procedure, and that the failure to so apply results in the nullification of the stoppage.

▉ We are of the opinion, however, that Czarnikow was not required under Code § 362(a) to seek relief from the stay prior to exercising its right of stoppage. As a practical matter, establishing as a prerequisite to such exercise an application for relief would in many instances effectively deny to the seller the right of stoppage, in light of the often short period between the filing of

---

4. We also take note of the numerous cases arising under the former bankruptcy statute and prior to the enactment of Bankruptcy Code § 546(c) holding that the seller's right of reclamation, set forth in UCC § 2–702(2), is not avoidable by the trustee in bankruptcy as an exercise of a statutory lien. *See, e.g., In the Matter of Telemart Enterprises, Inc.,* 524 F.2d 761 (9th Cir.1975), *cert. denied,* 424 U.S. 969, 96 S.Ct. 1466, 47 L.Ed.2d 736 (1976); *In re Daylin, Inc.,* 596 F.2d 853 (9th Cir.1979); *In the Matter of PFA Farmer's Market Ass'n,* 583 F.2d 992 (8th Cir.1978); *In re Federal's, Inc.,* 553 F.2d 509 (6th Cir.1977); *In the Matter of National Bellas Hess, Inc.,* 1 B.C.D. 926 (Bankr.S. D.N.Y.1975). *But see In re Giltex,* 17 U.C.C. Rep. 887 (S.D.N.Y.1975).

The rationale of these cases, namely, "that a state confers a priority repugnant to § 64 [11 U.S.C. § 545] only when it attempts to direct the disposition of assets to which the bankrupt has received a nondefeasible title." *In re Telemart Enterprises, supra,* 524 F.2d at 765–66, is equally applicable to consideration of the issue whether the right of stoppage in transit constitutes a statutory lien. Because, as discussed above, appellant at the time of Czarnikow's stoppage of the goods had but a defeasible title, these cases support the conclusion that Czarnikow had the right to stop the sugar in transit at least as against appellant's rights under Code § 545.

the petition and actual or constructive delivery of the goods during which the right must be exercised.[5] Stoppage in transit, as opposed to any disposition of the goods so stopped, should be viewed as analogous to the written demand required of a reclaiming seller under Code § 546(c). It appears clear that the issuance of that demand—as much an "act" within the purview of Code § 362(a)(3), (4) and (5) as the stoppage in transit—need not be preceded by a grant of relief from the automatic stay. *Cf.* 4 *Collier on Bankruptcy* ¶ 546.04, at 546–12 (15th ed. 1980) (seller must obtain modification of stay before it "actually reclaims goods"). Accordingly, Czarnikow's failure here to apply for and obtain relief from the stay is immaterial and does not vitiate the proper exercise of its right of stoppage.

## C. *Appellant's Procedural Claims*

Appellant raises as a third basis for remand several procedural claims. Appellant's assertion that Czarnikow bore the burden of proving its entitlement to relief from the automatic stay is irrelevant, in light of our discussion above. As to appellant's claim that the record is insufficient to support a ruling that Czarnikow stopped delivery of the sugar in transit, we need only note the great pains taken by Judge

Ryan to establish as part of the record that each party had presented its case, both on legal and factual grounds, on that issue. *See* Transcript of Hearing of September 18, 1981, at 110.

Finally, appellant argues that Judge Ryan erred in "not granting" the "only relief requested by Czarnikow from the bankruptcy court", namely an order (i) requiring appellant to assume or reject the two executory contracts in accordance with Code § 365; and (ii) requiring appellant to provide adequate assurance of its performance under the contracts, if assumed by appellant. *See* Appellant's Supplemental Brief, at 19–20.

■ The requested relief was properly founded on Code § 365(d)(2). Under that section, the non-debtor party to an executory contract[6] may apply for an order of the bankruptcy court requiring the trustee party to assume or reject such contract. In the absence of such order, the trustee may wait to assume or reject the contract until the confirmation of a plan of reorganization.

Appellant argues that the bankruptcy court failed to grant Czarnikow's request (i), and that, had the requested order been issued, appellant would have assumed the sugar contracts and provided adequate as-

---

5. It may be argued that the seller's failure to obtain relief from the stay in time to stop delivery could be remedied by the seller's subsequent exercise of its right of reclamation under UCC § 2–702(2) and Code § 546(c). We are of the view, however, that forcing the seller to deliver and then to reclaim, rather than allowing it simply to suspend delivery, would result in waste that cannot be rationalized in light of the right and the opportunity afforded the trustee to assume contracts regardless whether the seller has exercised its right of reclamation or its right of stoppage in transit. Indeed, inasmuch as the respective rights of a seller and trustee subsequent to reclamation are governed by Code § 546(c)(2) (requiring the court to grant reclamation unless it grants seller's claim as a priority or lien on the estate), while those of a seller and trustee subsequent to stoppage are governed by Code § 365(b)(1) (allowing the trustee to assume if it provides to the seller "adequate assurances of future performance"), the latter provision's less-favorable treatment of the seller suggests that, in general, trustees stand to be benefitted by having sellers

resort to stoppage in transit rather than forcing them to the remedy of reclamation.

Moreover, we note that there exists some question as to a seller's right of reclamation under UCC § 2–702(2) where the seller has knowledge of the buyer's insolvency at or before the time of delivery. *See In re Food Center of Delhi, Inc.,* 11 U.C.C.Rptg.Serv. 1186 (W.D.La.1973). If such knowledge does indeed preclude reclamation, then a seller who is unable to obtain relief from the automatic stay sufficiently in advance to exercise its right of stoppage may be effectively denied not only that right but also the right of reclamation expressly recognized in Code § 546(c).

6. An "executory contract" is nowhere defined in the Bankruptcy Code. However,

"[t]he legislative history adopts the principle of mutuality in saying that the term 'generally includes contracts on which performance remains due to some extent on both sides.'" 2 *Collier on Bankruptcy* ¶ 365.02, at 365.12 (15th ed. 1980) (footnotes omitted, quoting H.R. Rep. No. 595, 95th Cong., 1st Sess. 347 (1977)).

surances of performance thereunder. Such hypothesized assumption and assurances would have entitled appellant to the sugar, and entitles appellant, in view of the subsequent sale of the sugar, to some share in the proceeds thereof.

■ Czarnikow contends in response that once it properly exercised its right of stoppage in transit, it was excused from performance and the contracts were abrogated. As a result, there was no need for an order of the bankruptcy court giving appellant the opportunity to assume or reject. *See* Reply Brief of Appellee, at 7–8. We are of the view, however, that Czarnikow's position misstates the law. The exercise of the right of stoppage in transit does not abrogate, but merely suspends, the contract at issue. The contract remains in effect and the future course of the parties thereunder is governed under Code § 365(b). As one treatise states:

> "[T]he consequences of th[e] right given to the seller to refuse delivery of the goods unless· he is assured of cash payment for them when he discovers the buyer to be insolvent . . . is that the seller will not have to participate in any subsequent or pending insolvency proceeding instituted by or against the buyer as a mere general creditor. It may well be that the seller will be forced eventually to deliver the goods to the trustee in bankruptcy. Under the Bankruptcy Code, the trustee or debtor in possession in a chapter 11 case has the power to assume or reject executory contracts. In the case of rejection, his act, whether express or by operation of law under Section 365(d)(1) of the Bankruptcy Code would result in a breach of the contract, giving to the nonbreaching party all of the remedies available under applicable state law . . . .

In the event the trustee in bankruptcy assumes the contract, the seller will have to perform his end of the bargain by delivering the goods. The trustee by such assumption, however, must then perform according to the buyer's promise in the contract and make payment of the purchase price to the seller."

*See* 3 R. Dusenberg & L. King, *Sales & Bulk Transfers under the Uniform Commercial Code* § 13.03[2][a], at 13–14 to 13–16 (1980) (footnotes omitted).

■ Accordingly, the bankruptcy court's grant to Czarnikow of the right effectively to cancel the sugar contracts and to dispose of the sugar needed to have been predicated on an order requiring either assumption or rejection followed by appellant's rejection of the contracts; or assumption by appellant negated by the failure to provide assurances of performance, with the inadequacy of such assurances determined by the bankruptcy court. Absent an order to assume or reject, however, appellant was under no obligation to choose between the two options or, more importantly, to prove that it could have provided adequate assurances of performance,[7] and was therefore denied its rights by the court allowing Czarnikow to sell the sugar and litigate only with Bankers over the proceeds.

At the same time, however, we cannot disregard the late assertion of appellant's argument. At no point below, either prior to the entry of the order of September 21, 1981—to which appellant was given and took the opportunity to object—or, more significantly, prior to the order of November 9, 1981, denying appellant's motion for reconsideration of the September 21 order, did appellant call the bankruptcy court's attention to its failure to order appellant either to reject or assume and provide assurances.[8] This is especially troubling in

---

**7.** We recognize that there are suggestions in the record that appellant would have been unable to provide adequate assurances, but the evidence presented below appears wholly addressed to the issues whether the sugar was necessary for the effective reorganization of appellant and whether appellant could have provided "adequate protection"—issues prop-

erly considered under Code § 361(d)—rather than "adequate assurances of future performance". *See* Transcript of September 16, 1981, at 30–31.

**8.** Indeed, the issue was not presented in Exhibit B ("Issues on Appeal") to appellant's Statement of Issues and Designation of Record on

light of the bankruptcy court's focus on, *inter alia,* the issue of "adequate protection" under Code § 361(d), *see* Appellant's Supplemental Brief, at 21, which entails a factual inquiry highly similar to that required for resolution of the issue of "adequate assurances". We recognize, however, that the expedited nature of the proceedings below, a function of the threat of demurrage charges by the Edispsos against Czarnikow, suggests that the rule that a claim be either asserted below or waived as a ground for appeal should perhaps be applied here with less-than-absolute rigidity.

Accordingly, we remand this proceeding for the limited purpose of determining, first, whether appellant has by its actions below waived its claim to the right either to reject or to assume and provide assurances with regard to the sugar contracts. If Judge Ryan concludes that appellant has not waived that claim, he must then determine whether, in accordance with Code § 365, an order requiring appellant to assume or reject the sugar contracts should have been issued on or about September 21, 1981, the date of the initial order appealed from herein, and whether, if such an order would have issued, appellant would have been capable of providing on or about that date adequate assurances of its performance pursuant to that date. The need for and extent of any evidentiary hearing in this matter is wholly within the discretion of the bankruptcy court.

In all other respects, the orders appealed from are affirmed.

SO ORDERED.

Appeal, dated December 15, 1981, required pursuant to Rule 806 of the Rules of Bankruptcy Procedure, and first appears in Appellant's Supplemental Brief.