In re **MALONEY ENTERPRISES, INC., Debtor.**

**AVENTURA SPORTSWEAR, LTD., Plaintiff,**

v.

**MALONEY ENTERPRISES, INC., et al., Defendants.**

Bankruptcy No. 82–01007.
Adv. No. 82–0572.

United States Bankruptcy Court,
E.D. Kentucky,
Lexington Division.

Nov. 20, 1983.

Grover A. Carrington, Mount Sterling, Ky., for Aventura Sportswear, Limited.

John R. Dilenschneider, Jack R. Pigman, Columbus, Ohio, Jerry D. Truitt, Lexington, Ky., for Maloney Enterprises, Inc.

Joseph M. Scott, Jr., Lexington, Ky., for Unsecured Creditors' Committee.

## MEMORANDUM OPINION

JOE LEE, Bankruptcy Judge.

This matter is before the court for the limited purpose of determining whether the plaintiff made a timely demand for reclamation of goods pursuant to section 546(c) of the Bankruptcy Code, 11 U.S.C. § 546(c), and section 2–702 of the Uniform Commercial Code, as it appears in KRS 355.2–702.

## FINDINGS OF FACT:

The facts, which are not in controversy and which are stipulated by the parties, are as follows:

On November 24, 1982, the plaintiff, Aventura Sportswear, Limited ("Aventura"), shipped certain sportswear clothing products, invoiced at a total of $32,940.00, to the defendant/debtor, Maloney Enterprises, Inc. ("Maloney"). The goods were shipped F.O.B. Seattle, Washington and arrived at Maloney's Mt. Sterling, Kentucky warehouse on December 7, 1982. Maloney admits, for purposes of this adversary proceeding only, that it was insolvent throughout this period of time.

On December 8, 1982, Maloney filed its petition under chapter 11 of the Bankruptcy Code. Upon learning of the bankruptcy filing, Aventura sent a telegram demanding reclamation of the sportswear which was received by Maloney on December 10, 1982. Maloney refused to return the goods. Aventura commenced this adversary proceeding on January 3, 1983.

## CONCLUSIONS OF LAW:

The only issue before the court at this time is whether the demand of the plaintiff for reclamation of goods was timely for purposes of 11 U.S.C. § 546(c) and KRS 355.2–702. The goods were shipped F.O.B. Seattle on November 24, 1982. They arrived at Maloney's warehouse at Mt. Sterling, Kentucky on December 7, 1982. Demand for reclamation was made by the plaintiff on December 10, 1982.

The determination of this issue depends on the meaning of the term "receipt" for the purposes of 11 U.S.C. § 546(c) and KRS 355.2–702.

Section 546(c) of the Bankruptcy Code, 11 U.S.C. § 546(c), which deals with an unpaid seller's right of reclamation, provides as follows:

(c) The rights and powers of the trustee under sections 544(a), 545, 547, and 549 of this title are subject to any statutory right or common-law right of a seller, in the ordinary course of such seller's business, of goods to the debtor to reclaim such goods if the debtor has received such goods while insolvent, but—

(1) such a seller may not reclaim any such goods unless such seller demands in writing reclamation of such goods before ten days after receipt of such goods by the debtor; and

(2) the court may deny reclamation to a seller with such a right of reclamation that has made such a demand only if court—

(A) grants the claim of such a seller priority as an administrative expense; or

(B) secures such claim by a lien.

As indicated by legislative history, 11 U.S.C. § 546(c) is intended to recognize, in part, the validity of section 2–702 of the Uniform Commercial Code. The Kentucky version of that section, KRS 355.2–702, provides in pertinent part as follows:

(2) Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within ten days after the

receipt, but if misrepresentation of solvency has been made to the particular seller in writing within three months before delivery the ten day limitation does not apply. Except as provided in this subsection the seller may not base a right to reclaim goods on the buyer's fraudulent or innocent misrepresentation of solvency or of intent to pay.

(3) The seller's right to reclaim under subsection (2) is subject to the rights of a buyer in ordinary course or other good faith purchaser or lien creditor under this Article (KRS 355.2–403). Successful reclamation of goods excludes all other remedies with respect to them.

Whether Aventura's demand for reclamation was timely depends upon the meaning of the word "receipt" for the purposes of the above quoted subsections of the Bankruptcy Code and the Kentucky version of the Uniform Commercial Code.

Aventura asserts that its demand for reclamation was timely because the debtor received the goods in question on December 7, 1982, the day the goods arrived at Maloney's warehouse, which was less than ten days before Aventura made a written demand for reclamation on December 10, 1982.

Maloney asserts that Aventura failed to make a timely demand for reclamation because Maloney received the goods in question on November 24, 1982, the day the goods were shipped F.O.B. Seattle, which was more than ten days before Aventura made a written demand for reclamation.

In support of its assertion Maloney states that the contract for sale of sportswear garments by Aventura to Maloney was a shipment contract and, therefore, Aventura's delivery of the goods to the carrier was a delivery to Maloney, title passed to Maloney at the moment of tender to the carrier and loss of the shipment was thereafter at Maloney's risk. For these reasons, Maloney argues that in every practical sense Maloney received the goods on November 24, 1982.

The Unsecured Creditors' Committee, a party defendant herein, also asserts that Aventura failed to make a timely demand for reclamation. It also states that, pursuant to the shipment contract and F.O.B. term, delivery of the goods to the carrier by the seller constitutes delivery to the buyer, the F.O.B. designation indicates the place where passage of title and risk of loss rest in the buyer, and that for the above purposes the carrier is generally regarded as the buyer's agent for the purposes of accepting delivery. The Unsecured Creditors' Committee asserts that delivery to Maloney occurred when Aventura delivered the goods in question to the common carrier on November 24, 1982 and further asserts that the delivery date is the operative date on which the buyer received the goods.

The court does not believe that the date of delivery of the goods to a carrier pursuant to an F.O.B. contract, passage of title or risk of loss controls in determining the date of "receipt" for purposes of 11 U.S.C. § 546(c) and KRS 355.2–702.

For the reasons stated below the court finds that, for the purposes of 11 U.S.C. § 546(c) and KRS 355.2–702, the receipt of the goods by the debtor occurred December 7, 1982, the day the goods arrived at the debtor's warehouse and the debtor took actual, physical possession of the goods, as asserted by Aventura.

As mentioned above, Congress, in enacting the Bankruptcy Reform Act of 1978 and, specifically, section 546(c) thereof, intended to incorporate the Uniform Commercial Code reclamation provision into the Bankruptcy Code. Senate Report No. 95–989, 95th Cong., 2d Sess. 86–87 (1978), U.S. Code Cong. & Admin.News 1978, p. 5787, expresses this intention as follows:

The trustee's rights and powers under the strong arm clause, the successor to creditors provision, the preference section, and the postpetition transaction section *are all subject to any statutory or common-law right of a seller,* in the ordinary course of business, of goods to the debtor to reclaim the goods if the debtor received the goods on credit while insolvent. The seller must demand reclama-

tion within ten days after *receipt* of the goods by the debtor. . . . *The purpose of this provision is to recognize, in part, the validity of section 2–702 of the Uniform Commercial Code,* which has generated much litigation, confusion, and divergent decisions in different circuits. (emphasis added)

Congress apparently intended that a seller's rights under 11 U.S.C. § 546(c) be construed and interpreted within the context of the language of the reclamation provision of the Uniform Commercial Code and other Uniform Commercial Code provisions clarifying the reclamation provision.

It is the concept of "receipt," and not the concept of "delivery" which is relied upon by the defendants herein, that is embodied in the Uniform Commercial Code reclamation provision and which Congress incorporated in section 546(c) of the Bankruptcy Code.

KRS 355.2–103(1)(c) provides that *"[r]eceipt of goods means taking physical possession of them."* (emphasis added) Kentucky Commentary (1983) to that section provides, in part, as follows:

*"Receipt must be distinguished from delivery* particularly in regard to the problems arising out of shipment of goods . . . since the seller may frequently fulfill his obligations to "deliver" even though the buyer may never "receive" the goods. (emphasis added)

Further evidence that "receipt" of goods by the purchaser is not effectuated until such purchaser actually takes physical possession of such goods is provided by KRS 355.2–705. Said section provides, in part, as follows:

(1) The seller may stop delivery of goods in the possession of a carrier or other bailee when he discovers the buyer to be insolvent (KRS 355.2–702) and may stop delivery of carload, truckload, planeload or larger shipments of express or freight when the buyer repudiates or fails to make a payment due before delivery or if for any other reason the seller has a right to withhold or reclaim the goods.

(2) As against such buyer the seller may stop delivery until

(a) *receipt of the goods by the buyer;* or

(b) acknowledgement to the buyer by any bailee of the goods *except a carrier* that the bailee holds the goods for the buyer; or

(c) such acknowledgement to the buyer by a carrier by reshipment or as warehouseman; or

(d) negotiation to the buyer of any negotiable document of title covering the goods. (emphasis added)

Kentucky Commentary (1983) to the foregoing provision provides, in part, that "[a]s between the buyer and the seller, the latter's right to stop the goods at any time *until they reach the place of final delivery is recognized by this section."* (emphasis added)

The argument of the defendants herein, that the "F.O.B. Seattle" term contained in the contract of sale between Maloney and Aventura means that Maloney "received" the goods the moment they were delivered to the shipper in Seattle, would convert KRS 355.2–705 into useless verbiage. Under the defendants' interpretation of the term "receipt," Maloney "received" the subject goods in Seattle. If that interpretation were correct, KRS 355.2–705(2)(a) would bar all F.O.B. shipment sellers from ever exercising their rights under this section to stop goods in transit.

KRS 355.2–702(1) provides that "[w]here the seller discovers the buyer to be insolvent he may refuse delivery except for cash including payment for all goods theretofore delivered under the contract, and stop delivery under this Article (KRS 355.2–705)." Kentucky Commentary (1983) to that subsection states as follows:

The seller's right to withhold the goods or to stop delivery except for cash when he discovers the buyer's insolvency is made explicit in subsection (1) *regardless of the passage of title, and the concept of stoppage has been extended to include goods in the possession of any bailee who has not yet attorned to the buyer.*

It is obvious that the seller's remedies on discovery of a buyer's insolvency, as provided in KRS 355.2–702, include a right to withhold possession of goods from a buyer which runs until the buyer receives possession of the goods and a right to reclaim goods from a buyer under which the ten day period runs from the time the buyer receives possession of the goods. It is also obvious that, for the purposes of KRS 355.-2–702 and KRS 355.2–705, a carrier under an F.O.B. shipment contract should not be construed to be a buyer's agent.

*In re Murdock Machine & Engineering Co. of Utah,* 620 F.2d 767 (10th Cir.1980), demonstrates that the terms of shipment found in a contract of sale, and the passage of title resulting thereunder, are irrelevant to an analysis of a seller's remedy to stop goods in transit or to reclaim such goods. In holding that the seller's right to stop and reclaim steel was not cut off by the intervention of a good faith purchaser from the original buyer of the steel, the Court of Appeals concluded that the F.O.B. term contained in the purchase contract was irrelevant.

> Under the Uniform Commercial Code, the seller's refusal to deliver goods in his possession to an insolvent buyer, and the seller's order to stop delivery of goods in the possession of a carrier or warehouseman, remain dual aspects of the seller's right to withhold possession of goods from an insolvent buyer. (U.C.C. § 2–702(1)). That right attaches when the buyer becomes insolvent, but *generally speaking, it is enforceable at any time until the goods have come into the buyer's actual or constructive possession.* (U.C.C. § 2–705(2)). *Who has "title" to the goods is a matter of no relevance whatsoever.* (U.C.C. § 2–401. *Id.* at 773. (emphasis added)

In light of the above-quoted conclusion, it is clear that delivery of merchandise to a carrier pursuant to an F.O.B. shipment contract does not terminate the seller's right to stop that shipment, nor would such delivery start the running of the ten day period by the end of which such seller must make a demand for reclamation.

The court has taken note of KRS 355.2–401, which states in pertinent part that "[e]ach provision of this article with regard to the rights, obligations and remedies of the seller, the buyer, purchasers or other third parties applies irrespective of title to the goods except where the provision refers to such title."

*Ceres Inc. v. ACLI Metal & Ore Co.,* 451 F.Supp. 921 (N.D.Ill.1978), further demonstrates that "receipt" of goods, as defined and used throughout Article 2 of the Uniform Commercial Code, means taking physical possession, and not delivery to a carrier under an F.O.B. shipment contract. In that case, the buyer agreed to accept delivery of 300 tons of zinc at a warehouse in Indiana. The buyer also agreed to sell 300 tons of zinc to a sub-buyer "free in warehouse" in Illinois. After learning of the buyer's insolvency, the seller wired the Indiana warehouse, which had already delivered 40 tons of zinc to the sub-buyer, to stop delivery of any more zinc.

The sub-buyer contended that the warehouseman was acting as its agent in holding the zinc, thus giving the sub-buyer constructive possession of the zinc. Based on this agency argument, the sub-buyer contended that the seller's § 2–705 right to stop and to reclaim said zinc had expired. The seller argued that the terms of delivery contained in its contract with the buyer, i.e., delivery at the Indiana warehouse, did not constitute "receipt" of the zinc by the buyer so as to terminate the seller's right to stop and to reclaim said zinc. In rejecting the sub-buyer's agency theory of receipt, the court noted:

> Although, under general principles of law, the buyer's agent may be able to obtain actual possession of the goods for the buyer, *these general rules do not apply when the agent obtaining possession is also a bailee.* The reason is clear: U.C.C. § 2–705 specifically addresses the question of when a bailee is holding goods for the buyer and it specifically defines the two circumstances converting the bailee from seller's agent to the buyer's

agent in subsections (b) and (c). *Id.* at 923. (emphasis added)

Accordingly, the court upheld the seller's argument, holding that the seller's right of stoppage in transit was available until the buyer or the sub-buyer received actual physical possession of the zinc.

The above analysis demonstrates that a carrier, under an F.O.B. shipment contract, should not be construed to be a buyer's agent. Subsection (b) of section 2–705(2) explicitly provides that a carrier can not tender acknowledgement to a buyer that the carrier holds goods for said buyer and thus cut off a seller's rights of stoppage. Subsection (c) of section 2–705(2) provides the only means whereby a carrier's acknowledgement to a buyer will serve to terminate a seller's right of stoppage: acknowledgement by reshipment or as a warehouseman. As 'in the above discussed case, neither condition has been satisfied in the case at bar. KRS 355.2–702 provides two remedies to a seller on discovery of a buyer's insolvency: the right to stop delivery of goods and the right to reclaim goods. A carrier under an F.O.B. shipping contract that is not the buyer's agent for the purpose of cutting off the seller's right to the first remedy surely should not be construed as the buyer's agent for the purpose of cutting off the seller's right to the second remedy.

Based on its decision that the debtor received the goods in question on December 7, 1982 for the purposes of 11 U.S.C. § 546(c) and KRS 355.2–702, the court finds that Aventura made a timely demand for reclamation of certain sportswear garments from the debtor, Maloney Enterprises, Inc.

Counsel for the parties are directed to submit a judgment in conformity with this opinion.