**In re NEVINS AMMUNITION, INC., Debtor.**

**Bankruptcy No. 85–02579K.**

United States Bankruptcy Court, D. Idaho.

Sept. 24, 1987.

---

Weldon B. Stutzman, Chandler, Dillion & Allyn, Boise, Idaho, for debtor.

Larry E. Prince, Holland & Hart, Langroise, Sullivan, Boise, Idaho, for FFV Norma, Inc.

## OPINION

ALFRED C. HAGAN, Bankruptcy Judge.

FFV Norma, Inc. (Norma, Inc.) has moved for an amendment of the June 10, 1987 decision. In the alternative, Norma, Inc. requests reconsideration of its claim for priority administrative expense treatment.

## FACTS

In or about January of 1985 Norma, Inc. and Nevins Ammunition, Inc. (Nevins) began corresponding regarding the possibility of Nevins' purchase of brass shell casings from Norma, Inc. In or about March of 1985, Nevins placed an order with Norma, Inc. Norma, Inc. then placed the order with its parent company in Sweden, FFV Norma AB, (Norma AB) the actual manufacturer of the goods.[1] Norma AB manufactured the goods and shipped them to Norma, Inc. from Sweden. There is no confusion as to this earlier phase of the transaction. Norma, Inc. then shipped the goods to Nevins. The confusion arises with regard to the shipping terms between Norma, Inc. and Nevins within the United States, and how the shipping terms affect Norma, Inc.'s claim for priority administrative expense.

Three separate shipments of goods were made from Norma, Inc. to Nevins. The first two were shipped and actually received by Nevins before Nevins filed its Chapter 11 petition. The third shipment, the one which is the subject of this discussion, apparently left its place of origin prepetition (December 9, 1985) but arrived at Nevins postpetition (December 16, 1985). Nevins filed its petition for Chapter 11 relief on December 11, 1985.

## DISCUSSION

■ Those who render goods and services to the debtor-in-possession may be entitled to priority administrative expense treatment.[2] A two part test has been established for determining when a claim will be afforded priority status. First, the debt must arise from a transaction with the debtor-in-possession, and second, the transaction must have been beneficial to the debtor-in-possession in the operation of its business.[3] Obviously, only those transactions which occur post-petition can be considered for priority administrative expense. The pivotal issue in this case is, therefore, the time at which the seller's performance was completed. This is controlled by a determination of the contract delivery terms.

■ Norma, Inc., urges the goods were shipped via a "destination" contract[4] and Nevins urges a "shipment" contract.[5] This distinction is important as it determines whether the seller's contractual obligations were completed pre-petition or post-petition. This, in turn, determines whether Norma, Inc.'s claim is entitled to priority administrative expense treatment.

## NORMA'S ARGUMENT

If the contract is determined to be a "destination" contract, Norma, Inc. would not have completed its performance until the goods were delivered to the buyer.[6] This is also the time at which risk of loss

---

1. Apparently, this parent/subsidiary relationship is necessary in order to comply with strict government regulations regarding the import of ammunition.

2. 11 U.S.C. § 503(b)(1)(A).

3. *Matter of Jartran, Inc.* 732 F.2d 584, 586–87 (7th Cir.1984) citing *In re Mammoth Mart, Inc.,* 536 F.2d 950, 954 (1st Cir.1976).

4. Idaho Code § 28–2–319(1)(b).

5. Idaho Code § 28–2–320.

6. Idaho Code § 28–2–503

and title would transfer to Nevins.[7] Norma, Inc. alleges delivery to Nevins did not occur until December 16, 1985, five days after Nevins filed its petition for relief. As of the date of the petition, then, the contract would be considered an executory contract, i.e., either party could withhold further performance and such withholding would constitute a material breach.[8] When delivery occurred, post-petition, and the debtor-in-possession accepted the benefit of the executory contract, the necessary transaction with the debtor-in-possession would have occurred.

## NEVINS' ARGUMENT

If the contract is determined to be a "shipment" contract, Norma, Inc. would have completed performance once Norma, Inc. had duly delivered the goods to the carrier.[9] Title and risk of loss pass from the seller to the buyer at that time.[10] Nevins alleges the evidence indicates the goods were duly delivered to the carrier by the seller on December 9, 1985.[11] This is two days before the petition for relief was filed. As of the date of the petition, then, the contract would no longer be executory as the seller would have completed its performance upon delivery of the goods to the carrier. As performance would be complete, the necessary transaction with the debtor would be lacking and Norma, Inc.'s claim for priority administrative expense must be denied.

## DELIVERY TERMS

Shorthand trade symbols regarding shipment terms and their respective meanings, which were already in use in business, were codified in the UCC. Certain phrases such as "F.O.B. buyer's place of business," and "C.I.F. seller's place of business" are terms of art phrases which control aspects of delivery of goods from risk of loss to passage of title. It is only the infrequent case where the parties will not use such phrases to control the final phases of their business dealing.[12]

In the infrequent case where the parties have not specified their delivery terms with these trade phrases the UCC provides a rule of construction: shipment contracts are considered the normal type and destination contracts the variant type.[13]

> "Thus a contract which contains neither an F.O.B. term nor any other term explicitly allocating loss is a shipment contract."[14]

> "[t]he parties, in a contract contemplating carriage, must *explicitly* agree to a destination contract by using 'F.O.B. buyer's place of business' or equivalent language. Otherwise, the contract will be a 'shipment' contract."[15]

I have examined each of the admitted exhibits for indications as to the delivery terms. The only reference is "CF" found on Exhibit #4. Norma, Inc. insists this is an abbreviated reference to the carrier: Consolidated Freightways. The invoices contain a printed form box labeled F.O.B. which is inexplicably left blank.[16] The documentary evidence is inconclusive as to delivery terms. It appears this is a case where no terms of art phrases were used.

---

7. Idaho Code §§ 28–2–319, 28–2–503, and 28–2–509.

8. *In re Coast Trading Co., Inc.,* 744 F.2d 686, 692 (9th Cir.1984). See Also *Wagstaff v. Peters,* 203 Kan. 108, 453 P.2d 120, 124 (1969): "[a] contract is not executory merely because it has not been fully performed by payments, if all the acts necessary to give rise to the obligation to pay have been performed."

9. Idaho Code §§ 28–2–320, 28–2–504, and 28–2–509.

10. *Id.*

11. See Exhibit #4.

12. White and Summer, *Uniform Commercial Code,* 180 (2d. ed., 1980).

13. Idaho Code § 28–2–503 Official Comment 5. ("The seller is not obligated to deliver at a named destination and bear the concurrent risk of loss until arrival, unless he has specifically agreed so to deliver or the commercial understanding of the terms used by the parties contemplates such delivery.") *Id.*

14. White and Summers, at 182.

15. *Id.* at 183. (Emphasis original).

16. Exhibits 6 and 7. (These exhibits are dated post-delivery.)

Mr. Michael Bussard, a former employee of Norma, Inc., testified the delivery term was "F.O.B. destination" because all Norma, Inc.'s shipments were F.O.B. destination.[17] When asked why Norma, Inc. shipped F.O.B. destination, Mr. Bussard gave a dissertation as to why regulations on the import of ammunition made it necessary to form the subsidiary, Norma, Inc.[18] His testimony shed little light on why it would be necessary or even advantageous to ship F.O.B. destination. His testimony does not support his statement regarding F.O.B. terms.

Mr. Nevin's testimony also is of little help. I then turn to Idaho Code Section 28–2–308: the article 2 "gap-filler" for the delivery term:

> Absence of specified place for delivery—unless otherwise agreed
>
> (a) The place for delivery of goods is the *seller's place of business* or if he has none his residence; but
>
> (b) In a contract for sale of identified goods which to the knowledge of the parties at the time of contracting are in some other place, that place is the place for their delivery; and
>
> (c) Documents of title may be delivered through customary banking channels.

I find the parties had not previously agreed to a delivery term and therefore the present situation is covered by Idaho Code § 28–2–308(b). Both 28–2–308(a) and (b) provide delivery terms indicating a "shipment" contract. This is consistent with other sections of article 2 and previous discussion in this opinion.[19] The present contract therefore is a "shipment" contract wherein the place of delivery is wherever Consolidated Freightways took delivery of the goods.[20]

Pursuant to the discussion on completion of performance in shipment contracts, supra, I find that Norma, Inc. completed its performance when Consolidated Freightways took possession of the goods on December 9, 1985 which, in turn, gave rise to pre-petition Nevins' obligation to pay.[21] As completion occurred two days prior to the petition for relief, and as no executory contract remained to be completed on the date of the petition for relief, no transaction between the debtor-in-possession and Norma, Inc. occurred. Without such a transaction Norma, Inc. has failed to meet the requirements necessary to qualify for § 503 priority administrative expense treatment.

### STOPPAGE IN TRANSIT

Norma, Inc. has made reference to a Ninth Circuit Court of Appeals case as authority for its argument that the availability of the remedy of "stoppage in transit[22]" mandates a finding that the contract is executory until actual receipt when goods are ordered pre-petition but are not received until after the petition has been filed.

The Ninth Circuit in the *Coast Trading* case found the contract to be executory where the seller stopped shipment of the goods in transit.[23] The Court stated: "The contract should be no less executory because the seller chooses not to suspend performance but tenders performance subsequent to the filing of the bankruptcy petition."[24]

---

**17.** Hearing transcript pp. 20–21.

**18.** *Id.* at 21.

**19.** See notes 12–15, *supra,* and accompanying text.

**20.** The evidence indicates the goods were unloaded and stored at an Eastern Port upon their arrival to this country from Norma AB in Sweden. It is this place which shall serve as the place of delivery since this is the location at which Consolidated Freightways took delivery from Norma, Inc.

**21.** Idaho Code § 28–2–507(1).

**22.** Idaho Code § 28–2–705.

**23.** *In re Coast Trading, supra,* note 8, 744 F.2d at 693; citing *In re National Sugar Refining Company,* 27 B.R. 565, 573–74 (S.D.N.Y.1983).

**24.** *In re Coast Trading, supra,* note 8, 744 F.2d at 693.

■ If goods are stopped in transit pursuant to 2–705 the contract is executory. However, the second statement concerning "no stoppage in transit" is correct in the case of destination contracts only.[25] I conclude the instant case is distinguishable from the *Coast Trading* case. The parties can contract for any number of shipping terms in a contract.[26] These can vary from a simple situation where the buyer takes delivery at the seller's place of business to the more complicated shipment by the seller to the buyer's place of business. The choice of shipping terms may alter other details of performance through to the completion of the contract, i.e. risk of loss, transfer of title, etc.[27] The time for completion of performance can be lengthened or shortened depending upon what type of shipping term is chosen. For example, in a "shipment: seller's place of business" contract, performance is completed when the goods are duly tendered to the carrier at the seller's place of business.[28] In an "FOB: buyer's place of business" contract, on the other hand, performance is not completed until the seller tenders delivery at the buyer's actual place of business.[29] Thus, the seller has completed performance under the former contract as soon as the goods leave the seller's place of business. The latter contract requires additional undertaking on the part of the seller before performance is completed. A contract is no longer executory when performance is completed.[30]

■ Section 2–705 of the Uniform Commercial Code, when exercised, undoes delivery.[31] Delivery, for purposes of 2–705 means *receipt* of the goods by the buyer.[32] One can have delivery without receipt.[33] The critical factor for stoppage in transit is the stoppage must occur prior to actual physical possession of the goods by the buyer.[34] Once the buyer has possession they are no longer in transit. If they are no longer in transit they can no longer be stopped.[35]

■ Thus, whether a contract is a "shipment" contract or a "destination" contract is of little or no consequence or relevance to a stoppage in transit discussion.[36] Stoppage in transit is a potential remedy for the seller in the instance where goods are *in transit* to an insolvent buyer. The seller must act before the buyer actually receives the goods in order to take advantage of this remedy.[37] Risk of loss, passage of title, or whether it is a shipment or a destination contract are not the critical factors. The critical factor is whether the goods have been actually physically received by the buyer. Once the goods have been physically received by the buyer, the remedy is no longer available.[38]

■ When goods are stopped in transit the seller regains possession.[39] If the

**25.** The court in In re Coast Trading was confronted with a "destination contract". Therefore, the court did not evaluate the precedent leading to the above statement (text accompanying note 23 *supra*) as it effects "shipment contracts". As the present case involves a "shipment contract", *In re Coast Trading* is inapposite.

**26.** See notes 4–10, *supra,* and accompanying text.

**27.** See notes 7–10, *supra,* and accompanying text.

**28.** See notes 9–11, *supra,* and accompanying text.

**29.** See notes 6–8, *supra,* and accompanying text.

**30.** See note 8, *supra,* and accompanying text.

**31.** Idaho Code § 28–2–705 Official Comment 6: "Under an effective stoppage under this section, the seller's rights in the goods are the same as if he had never made a delivery."

**32.** *In re Maloney Enterprises, Inc.,* 37 B.R. 290, 294 (Bankr.E.D.Ky.1983).

**33.** *Id.*

**34.** *Id.,* at 294–95.

**35.** Idaho Code § 28–2–705(2)(a).

**36.** *Matter of Pester Refining Co.,* 66 B.R. 801, 810–11, (Bankr.S.D.Iowa 1986).

**37.** Idaho Code § 28–2–705(2)(a).

**38.** *Id. See also, Matter of Pester Refining Co., supra,* note 36.

**39.** Idaho Code § 28–2–705 Official Comment 6.

contract is a "shipment contract: seller's place of business" and the seller places the goods in the hands of the carrier, the contract has been fully performed on the seller's part and there remains no part to be executed. Once the seller stops the goods in transit, however, the seller undoes this delivery and the contract becomes executory once again.[40] In the case of a shipment contract, where the seller's performance is completed upon tender of the goods at the seller's place of business, an actual stoppage in transit is required in order to undo performance and again make the contract executory.[41] Contracts where the shipment terms require the seller to deliver to the buyer's place of business, however, remain executory until the goods are actually received by the buyer.[42] This is true regardless of whether the seller stops the goods in transit or allows them to continue on their way.

■ In the instant case, the parties were involved in a shipment contract wherein the seller's performance was completed upon tender of the goods to the carrier. This occurred on December 9, 1985. Thus, the contract was no longer executory after December 9, 1985. Stoppage in transit pursuant to Idaho Code Section 28–2–705 is essential to a claim by Norma, Inc. that the contract was executory. No stoppage in transit occurred. The completed status of the contract was never undone and, at the time the debtor's filed their petition, no executory contract with Norma, Inc. existed to be assumed by the debtor in possession. Therefore, the debt owed Norma, Inc. is not entitled to priority administrative expense treatment.

Norma, Inc.'s motion for amendment of the June 10, 1987 judgment and alternative motion for reconsideration of its claim for priority administrative expense will be denied by separate order. Norma, Inc.'s claim shall be treated in the same manner as other unsecured pre-petition claims. Al-though the motion for amendment is denied this opinion shall supercede and replace the opinion of June 10, 1987.

---

**40.** *In re Coast Trading Company, Inc.* 744 F.2d 686, 693 (9th Cir.1984), citing *In re National Sugar Refining Company,* 27 B.R. 565, 573–74 (S.D.N.Y.1983).

**41.** Idaho Code § 28–2–705 Official Comment 6.

**42.** Idaho Code § 28–2–503(1), (3). *See Also,* White and Summers, *Uniform Commercial Code,* 111 (2d Ed., 1980).