In the Matter of **CREATIVE BUILD-INGS, INC.**, an Illinois corporation, Debtor.

No. 73–1328.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 11, 1974.

Decided June 24, 1974.

Donald G. Beste, Peoria, Ill., for appellant.

Frank O. Wetmore, II, Chicago, Ill., for appellee.

Before SWYGERT, Chief Judge, KILEY, Senior Circuit Judge, and CUMMINGS, Circuit Judge.

KILEY, Senior Circuit Judge.

This appeal is from a district court judgment refusing to set aside the denial by a Referee in Bankruptcy of Meyer Furnace Company's (Meyer's) petition for reclamation of goods it had shipped to Creative Buildings, Inc. before Creative filed its Chapter XI petition for an arrangement under the Bankruptcy Act, 11 U.S.C. § 701. We affirm.

Meyer had transacted business with Creative since June of 1969, with a sixty-day credit line and was doing so when Creative filed its petition for arrangement on January 28, 1972. Creative had given Meyer two checks for goods, one for $47,859.23, dated November 18, 1971, and the other for $9,900.76, dated December 1, 1971. Both checks were returned for insufficient funds (NSF). The first check was paid when represented. Meyer redeposited the sec-

ond check and requested its bank to hold it for collection. Meyer's bank account had not been debited with the amount of the second check when on January 5, 1972, it shipped the goods in controversy to Creative. No debit for the $9,900.76 amount appearing on its December 31, 1971 bank statement, Meyer assumed that the check had cleared, and when the goods were shipped to Creative on January 5, 1972 Meyer was unaware that its bank was still holding the check. Its account was not debited for the check until January 31, 1972.

Meyer filed this petition on March 9, 1972 for reclamation. The Referee denied the petition and denied rehearing. The district court denied Meyer's petition for review after a hearing. Meyer's appeal followed.

I

Meyer contends that when Creative gave it the NSF checks in November and December 1971 it had "ceased to pay its debts in the ordinary course of business" and had demonstrated that it could not "pay its debts as they became due" or was then "insolvent" under the Federal Bankruptcy Act; and was therefore insolvent by definition under Section 1–201 of the Illinois Uniform Commercial Code.[1]

 There is no proof that the "fair value" of Creative's assets were less (when the checks were given) than its total liabilities and accordingly it was not insolvent under the Bankruptcy Act. Meyer's argument that Creative's NSF checks as a matter of law rendered it insolvent attributes an absolutely literal meaning to the Code's "definition" of insolvency. We reject an application of an absolutely literal meaning to the words of the Code. There are a variety of business transactions in which for one reason or another NSF checks issue either through mistake, or miscalculation, or good faith reliance by the draw-

---

1. Insolvency is defined in Section 1–201(23) of the Code as follows:

A person is "insolvent" who either has ceased to pay his debts in the ordinary course of business or cannot pay his debts as they become due or is insolvent within the meaning of the federal bankruptcy law.

er on anticipated income, or other more or less innocent circumstances. See Hamm Brewing Co. v. First Trust & Savings Bank, 103 Ill.App.2d 190, 242 N.E.2d 911, 914 (1968). We think that the drawer cannot reasonably be held to have ceased paying bills in ordinary course, or to be unable to pay its debts when due, in every case in the variety of transactions regardless of circumstances.

In our view decision must rest on the facts of each transaction. The issuance of the NSF checks may indicate an impecunious status and be notice that the drawer *may be* insolvent. But in context of the testimony here, Meyer does not argue and we cannot hold that the district court's decision—that Creative was not insolvent when the checks were issued—is clearly erroneous.

## II

Meyer's principal contention is that the two checks given Meyer in November and December 1971 amounted to misrepresentations of solvency. There is no transcript reference supporting Meyer's comptroller's testimony that he relied upon five NSF checks given Meyer between October 1971 and December 1971, in releasing the shipment. He said at trial that he relied upon telephone assurances as well as upon NSF checks. On appeal, Meyer relies only upon two NSF checks. The parties agree that if Meyer is to have a remedy in this case, it must derive from the proper interpretation of Chapter 26, Section 2–702, Illinois Revised Statute (Illinois Uniform Commercial Code).[2]

Meyer argues that the two NSF checks were a misrepresentation of solvency "in writing" within three months of Creative's receipt of the shipment, entitling Meyer to reclaim the goods.[3] Creative argues that Meyer had the burden of proving Creative's insolvency and its alleged misrepresentation of solvency in November and December 1971; and that Meyer offered no proof of insolvency, except the two checks, and did not prove by the checks that Creative misrepresented its solvency.

Meyer's demand was not made within ten days of the January 5, 1972 delivery to invoke the remedy in the first clause of Section 2–702. Accordingly, the remedy provided in the second clause of the paragraph is the basis of Meyer's complaint. In order to successfully reclaim the goods, therefore, Meyer had the burden to prove, prima facie, that Meyer discovered that Creative was insolvent when the latter received the goods on January 5, 1972 and that Creative misrepresented its solvency in writing to Meyer within three months prior to that date. There is also a requirement implicit in paragraph 2 that Meyer must prove he relied upon the two NSF checks in shipping the goods.

Both parties rely upon the decision of the Appellate Court of Illinois in the *Hamm Brewing Co.* case *supra*. There, Lape, a Hamm beer distributor, borrowed money from the bank under a Security Agreement and Consignment of Inventory with an after-acquired property clause. The Bank perfected its security interest. Lape defaulted in payments and the bank took possession of the consigned beer and sold it. Hamm sued the bank under Section 2–702(2), asserting the right to possession of the beer based on allegation that dishonored checks given Hamm by Lape were written representations of solvency. The *Hamm* trial court decided, as a matter

---

2. Section 2–702(2) provides as follows:
 (2) Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within 10 days after the receipt, but if misrepresentation of solvency has been made to the particular seller in writing within 3 months before delivery the 10 day limitation does not apply. Except as provided in this subsection the seller may not base a right to reclaim goods on the buyer's fraudulent or innocent · misrepresentation of solvency or of intent to pay.

3. In the bankruptcy court Meyer relied, in support of his petition for reclamation, upon a letter written January 10, 1972 to Meyer's comptroller by Creative. That letter is not urged on appeal.

of law, that the dishonored checks did not amount to representation of solvency and that Hamm could not use the checks to invoke the benefit of Section 2–702(2). The appellate court affirmed.

The appellate court stated at p. 914 of 242 N.E.2d that it could affirm only if, on the undisputed facts, the trial court could rule as a matter of law that the checks and "affidavits and exhibits" in evidence were not representations of solvency. But the court's holding at pp. 915–916 is that the undisputed facts showed no reliance by Hamm upon the dishonored checks in granting credit to Lape.

The appellate court noted several rules which are pertinent to our decision: whether the checks are representations of solvency is a question of fact, p. 914; implied in Section 2–702(2) is the requirement that the "writing" be treated by the Seller as a representation, pp. 914–915; Illinois decisions in commercial transactions involving misrepresentation are to be considered in Section 2–702(2) cases, p. 915; in determining the right of reliance on the representations, the facts, knowledge of which the Seller had, or in prudence should have had, must be taken into consideration, p. 915; under Section 1–203, good faith in dealing is required and a Seller who continues to sell and to extend credit knowing the Buyer's insolvency is not in good faith and should not profit by his lack of prudence. *Id.* The appellate court applied these rules in finding Hamm lacked good faith and prudence in its dealing with Lape.

█ We are not persuaded that under these Illinois rules we are bound by Meyer to apply the *Hamm* decision to reverse the district court judgment in favor of Creative. It is true that the *Hamm* court noted, p. 915, that "Official Comment" indicates that any receipt of goods on credit is a "tacit representation" of solvency. But since the question is one of fact, and unless the trial court's finding against Meyer on the factual issue of misrepresentation of sol-

vency is clearly erroneous, the finding must stand.

Acceptance by Creative of the goods on credit and payment by check may have been a tacit representation of solvency. But there are facts in the record which could reasonably overcome that silent prima facie testimony. The November 1971 NSF check given Meyer was paid before the January 5 shipment after Meyer redeposited it in its bank. That check was for goods previously accepted by Creative and its payment for the $47,859.23 in goods would be an indication of solvency. The fact that an original check had been dishonored ought to be sufficient to cause some uneasiness in a Seller as to whether or not the Buyer is financially stable. But if uneasy, a reasonable Seller should be expected to make prudent inquires before extending further credit.

In any event, that substantial check was paid, and its payment could have been an inducement for Meyer's comptroller, to some extent, to make the shipment for which the December 1971 $9,900.76 Creative check was given. Testimony by Meyer's comptroller that he relied upon payment of the $47,859.23 check and issuance of the $9,900.76 check in making the subsequent $9,900.76 shipment is perhaps plausible. That testimony, however, is inconsistent with his testimony on cross-examination that before that shipment was made he did not agree to make it until he was satisfied by Creative's telephone assurance that the payment would come from a source other than Creative, that is, from a Chicago Title and Trust Company escrow.

We think, at best for Meyer, the comptroller's direct testimony would have proven prima facie that the issuance of the checks was a "tacit representation" of solvency which contributed to some extent to induce the shipment. *Hamm,* p. 915. The Referee found that in making the January 5, 1972 shipment Meyer did not rely upon the NSF checks as representative of solvency, but relied "primarily if not entirely" upon the rep-

resentation that payment for the shipment would be made out of the Chicago Title and Trust Company escrow. Meyer's comptroller testified, inter alia, that he relied on both the checks and the promise of the escrow payment. The Referee therefore could find as a fact under all the circumstances either that Meyer did not truly rely upon the NSF checks as representation of solvency, but rather on the assured payment from the Chicago Title and Trust Company escrow; or relied upon both the payment of the checks and the escrow. The Referee was in a better position than we are to decide the factual issue whether the assurance of payment by checks from the escrow account was the primary, if not the only, inducement.

The decision of the appellate court in the *Hamm* case does not compel reversal of the district court judgment approving the Referee's finding. On the contrary, it supports our affirmance.

We hold that the Referee's finding, undisturbed by the district court, is not clearly erroneous. It is unnecessary for us to consider any other points raised by Meyer.

Affirmed.