## In re FURNITURE DISTRIBUTORS, INC., Debtor.

### Bankruptcy No. 84-879-HL.

United States Bankruptcy Court, D. Massachusetts.

Sept. 14, 1984.

Henry J. Boroff, Framingham, Mass., for debtor.

Judy K. Mencher, Goodwin, Proctor & Hoar, Boston, Mass., for movants P & W Distributors, Inc., Jofran Sales, Inc., and Stoneville Furniture Co.

Richard E. Mikels, Peabody & Brown, Boston, Mass., for Creditors Committee.

## MEMORANDUM DENYING RECONSIDERATION AND REOPENING

HAROLD LAVIEN, Bankruptcy Judge.

This matter most recently came before the Court on counsel's Motion for Reconsideration, for an Amendment of the Findings or, in the Alternative, for a New Trial on the Denial of the Reclamation Claims based upon the failure to prove insolvency.[1] Hearing was held on August 30, 1984. Counsel conceded that "bankruptcy," or "balance sheet," insolvency was unproven. Counsel, however, argued that 11 U.S.C. § 546(c)[2] tracked the Uniform Commercial

---

1. Specifically, insolvency was unproven for the date of delivery of the three creditors represented by counsel—June 8 & 11, 1984 for Jofran Sales, Inc., June 18 for P & W Distributors, Inc., and June 8 & 11 for Stoneville Furniture Company.

2. 11 U.S.C. § 546(c) reads:

(c) The rights and powers of the trustee under sections 544(a), 545, 547, and 549 of this title are subject to any statutory right or common-law right of a seller, in the ordinary course of such seller's business of goods to the debtor to reclaim such goods if the debtor has received such goods while insolvent, but—

Code ("UCC"), specifically UCC § 2–702,[3] which permits proof of equity insolvency—the inability of the debtor to pay its bills as they come due. Further, it was argued that the Court prevented counsel from exploring this area or, in the alternative, that counsel had decided that, not needing to prove balance sheet insolvency, counsel should be provided with an additional opportunity to prove equity insolvency based upon events subsequent to the initial hearing. Counsel also argued that the filing of the involuntary coupled with the debtor's answer converting to Chapter 11 constituted an admission of equitable insolvency. Finally, it was argued that as a matter of equity, counsel's clients are entitled to another opportunity to prove their case. Motion denied.

In the case at bar, the motions for reclamation were first heard on August 8, 1984. Movants' reclamation motions were grounded upon 11 U.S.C. § 547(c) and Mass.Gen.Laws ch. (UCC) 106 § 2–702. Scheduled at the same time was a hearing on the sale[4] of all of the inventory of Puritan Furniture Corp., another chapter 11 debtor who had actual possession of any of the goods[5] in question. Although an expedited determination of the reclamation motions would not appear to have been necessary because the Court offered counsel an alternative that would have permitted hearing of the reclamation motions at a later date.[6] Counsel for both debtors, the Creditor's Committee, and other creditors, opposed the expedited determination of the reclamation because of insufficient time to be fully prepared; however, counsel declined the offer and insisted on the need of proceeding on the reclamation on the basis of the expense and potential unavailability of out-of-town witnesses who were then present. After presenting two witnesses and eight pieces of documentary evidence, counsel rested. The Court noted, however,

If that concludes the evidence, unless I missed something, there is one essential piece of evidence that has not been submitted; and it would seem that, unless I've missed it, because I'm not going to reopen the evidence now to take new evidence, that there's a fatal gap here.

I don't recall any evidence that was offered that Furniture Distributors, Inc. was insolvent on the date that the goods were shipped. Did I miss it? Was it there somewhere?

Transcript pp. 66–67. Counsel was not able to point to any specific evidence. Instead, counsel alluded to the reclamation

---

(1) such a seller may not reclaim any such goods unless such seller demands in writing reclamation of such goods before ten days after receipt of such goods by the debtor; and
(2) the court may deny reclamation to a seller with such a right of reclamation that has made such a demand only if court—
(A) grants the claim of such a seller priority as an administrative expense; or
(B) secures such claim by a lien.

3. Mass.Gen.Laws ch. 106 (UCC) § 2–702 reads: Seller's Remedies on Discovery of Buyer's Insolvency.
(1) Where the seller discovers the buyer to be insolvent he may refuse delivery except for cash including payment for all goods theretofore delivered under the contract, and stop delivery under this Article (section 2—705).
(2) Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within ten days after the receipt, but if misrepresentation of solvency has been made to the particular seller in writing within three months before delivery the ten day limitation does not apply. Except as provided in this subsection the seller may not base a right to reclaim goods on the buyer's fraudulent or innocent misrepresentation of solvency or of intent to pay.
(3) The seller's right to reclaim under subsection (2) is subject to the rights of a buyer in ordinary course or other good faith purchaser or lien creditor under this Article (section 2—403). Successful reclamation of goods excludes all other remedies with respect to them. St.1957, c. 765, § 1, effective Oct. 1, 1958.

4. In fact, this matter was not resolved until August 14, 1984.

5. A matter also not proved was the existence on the dates of the reclamation demands was the existence in either the debtor's or Puritan's possession of any or all of said goods.

6. Since a sale of all of the inventory in Puritan's possession was pending, the Court offered counsel, at the client's sole option, the right to approve the auction sale price of their goods.

motions and the 2–702 telegram. Those items were rejected by the Court as unproven allegations, obviously not admitted or the present contested proceeding would have been unnecessary. Additionally, counsel noted the debtor's assent to the bankruptcy involuntary petition (transcript p. 73). That was also rejected by the Court as containing no probative weight as evidence. Actually, there was no admission but an answer assenting to the court jurisdiction and converting the case to Chapter 11 which did not require insolvency in either sense. Despite the Court's proposed rulings, the Court took a supper recess from the "long, hot day" to consider counsel's oral motion to reconsider the Court's finding and to reopen the evidence. When court resumed, the Court reopened the evidence despite the objection of at least one party on counsel's assurances that insolvency could be proven "easily," and in equity and fairness to the clients, she should be given an opportunity to correct the oversight of an obvious fact. No request for additional time was made. Accordingly, a witness was called and examined without any limitation imposed by the Court, but no evidence was produced of insolvency in either the balance sheet or equity sense. Counsel did not claim surprise and request a continuance. The motions for reclamation were denied.

Reconsideration is permitted in the cases of:

(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinisic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Fed.R.Civ.P. 60(b), made applicable to bankruptcy procedure by Bankruptcy Rule 9024. Reopening is permitted

in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of the United States.

Fed.R.Civ.P. 59(a), made applicable to bankruptcy procedure by Bankruptcy Rule 9023. Although the rules have granted the Court broad discretion to decide the motion in question, such discretion cannot be described as limitless.

■ Of all of the arguments presented by counsel, the most intriguing is that "insolvency" for the purposes of reclamation includes not only a "balance sheet" analysis, 11 U.S.C. § 101(26)(A), but also an "equity" test, the non-payment of debts in the ordinary course of business. Mass.Gen. Laws ch. 106 (UCC) § 1–201(22). In sum, 11 U.S.C. § 546(c) is the exclusive remedy for creditor reclamation claims. *In re Koro Corp.,* 20 B.R. 241, 243 (Bankr. 1st Cir.1982), *affirming* 10 B.R. 767 (Bankr.D. Ma.1981). However, § 546(c) recognizes the "statutory right or common law right of a seller, in the ordinary course of such seller's business, of goods to the debtor to reclaim such goods . . . ." "The purpose of the provision is to recognize, in part, the validity of section 2–702 of the Uniform Commercial Code . . . ." Senate Report No. 95–989, 95th Cong.2d Sess. 86–87 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5872–5873. Accordingly, § 546(c)'s endorsement of statutory and common law rights would imply use of similar statutory and common law definitions to construe and interpret such rights. *In re Maloney Enterprises, Inc.,* 37 B.R. 290, 11 B.C.D. 764, 766 (Bankr.E.D.Ky. 1983); *see also, In re Creative Buildings, Inc.,* 498 F.2d 1 (7th Cir.1974); *In re Mel Golde Shoes, Inc.,* 403 F.2d 658 (6th Cir. 1968); *In re Kirk Kabinets, Inc.,* 393 F.Supp. 798, 15 U.C.C.R.S. 746, 748 (Bankr. M.D.Ga.1975). Thus, the UCC definition of insolvency would apply to any application of a UCC remedy. *See,* Mann & Phillips, *Section 546(c) of the Bankruptcy Reform*

*Act: An Imperfect Resolution of the Conflict Between the Reclaiming Seller and the Bankruptcy Trustee,* 54 Am.Bankr. L.J. 239, 262, n. 116 (1980) (arguing that "the obvious intent of [the Bankruptcy Code] drafters to track the language of UCC § 2–702(2)"). Moreover, when the writers of the Bankruptcy Code wanted to draw *specific* exception to the UCC, a specific subsection was written. Yet, all the terms of a statute must be read as meaningful. Still, one could argue that the term "insolvent" could be read merely to excluded non-insolvency reclamation rights. Mass.Gen.Laws ch. 106 (UCC) § 2–507; *see also,* Quinn's Uniform Commercial Code Commentary and Law Digest, § 2–507(A) (1978 Ed. and 1984 Cumulative Supplement No. 1).

But, is § 546(c) a mirror image of the UCC provisions of § 2–702? A careful reading reveals at least four important differences. First, they start from a different point of reference. Section 546(c) is a limitation on the avoiding powers of the trustee and, like all limitations, are generally strictly construed [7] while § 2–702 is intended as a liberal provision to aid the seller. Second, in keeping with this difference in emphasis, the demand for reclamation in bankruptcy must be in writing while no such limitation is required by the UCC. Third, § 547(c) has an ordinary course of business requirement. Finally, § 547(c) requires that the goods be delivered while insolvent, a rather superfluous statement unless the words are to have a meaning other than those of the UCC.

■ The proper application of § 547(c) involves a two-step process—first, the Bankruptcy Act requirements must be met and then, and only then, do we look to see if there is any statutory or common law right.

■ The bankruptcy requirement is, first, the goods must be delivered in the ordinary course *while* the debtor is *insolvent,* and then, the demand must be in writing within ten (10) days. 11 U.S.C. § 101(26) defines insolvency as the "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation ...." Section 101 of title 11 (the Bankruptcy Code), wherein the above definition is contained, begins with the following "§ 101 Definitions: In this title...." It is blackletter law that

[W]here the language of a statute is clear, it must be complied with, even though the statute contains a provision for liberal construction. No objection can be made because the statutory definitions differ from definitions of the same terms in other statutes, or in other parts of the same statute. (footnotes omitted)

C.J.S. *Statutes* § 315 at 539. Moreover, it is a maxim of statutory construction that a statute should be read so that all its provisions and terms are meaningful. *United States v. Menasche,* 348 U.S. 528, 75 S.Ct. 513, 99 L.Ed. 615 (1955); *Wilkinson v. Leland,* 27 U.S. 627, 662, 2 Pet. 627, 662, 7 L.Ed. 542 (1829); *Tabor v. Ulloa,* 323 F.2d 823 (9th Cir.1963); *Commissioner of Corporations & Taxation v. Chilton Club,* 318 Mass. 285, 61 N.E.2d 335 (1945).

■ Accordingly, express use of the term "insolvent" in 11 U.S.C. § 546(c) and the applicable Bankruptcy Code definition contained in § 101 act to limit the scope of any statutory or common law right to reclamation, despite such statutory or common law reliance upon a different definition of "insolvency." The Court notes that it may construe the meaning of a statute only if there is an issue of ambiguity. *United*

7. *Durovic v. Richardson,* 479 F.2d 242 (7th Cir. 1973); *Korherr v. Bumb,* 262 F.2d 157 (9th Cir. 1958); *Gault v. Commissioner of Internal Revenue,* 332 F.2d 94 (2d Cir.1964); *United States v. Allan Drug Corp.,* 357 F.2d 713 (10th Cir.1966); *Agua Caliente Band of Mission Indians v. County of Riverside,* 442 F.2d 1184 (9th Cir.1971); *Securities and Exchange Commission v. American*

*International Savings & Loan Ass'n, Inc.,* 199 F.Supp. 341 (D.Md.1961); *United States v. Bodine Produce Co.,* 206 F.Supp. 201 (Ariz.1962); *Goins v. Board of Pension Com'rs of Los Angeles,* 96 Cal.App.3d 1005, 158 Cal.Rptr. 470 (1979); *Kulis v. Moll,* 172 Conn. 104, 374 A.2d 133 (1976); *State v. Nourse,* 340 So.2d 966 (Fla.App. 1976).

*States v. Yermian*, —— U.S. ——, 104 S.Ct. 2936, 2944, 82 L.Ed.2d 53 (1984) (Rehnquist, J., dissenting); *St. Martin Evangelical Lutheran Church v. South Dakota*, 451 U.S. 772, 791, 101 S.Ct. 2142, 2152, 68 L.Ed.2d 612 (1981) (Stevens, J., concurring). If one focuses upon 11 U.S.C. §§ 546(c) and 101(26), there is no ambiguity—the meaning of the statute is clear, no reclamation is permitted unless the debtor is proven insolvent within 11 U.S.C. § 101(26). *United States v. Holroyd*, 732 F.2d 1122, 1125 (2d Cir.1984) ("Our analysis is constrained by a fundamental rule of statutory construction: when the express language of a statute is clear, a court will not adopt a different construction absent clear legislative history contradicting the plain meaning of the words.")

It might be noted that 11 U.S.C. § 21, as it existed under the Bankruptcy Act of 1898, drew its distinctions in the acts of bankruptcy between insolvency and what has come to be called equitable insolvency. Congress was not only aware of the difference but only called balance sheet deficiencies insolvency. *See, e.g.,* 11 U.S.C. § 21(a)(5)—

> (5) while insolvent *or* unable to pay his debts as they mature, procured, permitted, or suffered voluntarily or involuntarily the appointment of a receiver or trustee to take charge of his property (emphasis added).

The issue at hand is one of first impression. *But see, In re Landy Beef Co.,* 30 B.R. 19, 21 (Bankr.D.Ma.1983).

■ However, this proceeding does not turn on the Court's determination of this issue since insolvency by either definition was not proved. The Court *did not* prohibit counsel from the presentation of evidence on the issue of "equity" insolvency. A review of the transcript, as noted by counsel, shows no objection sustained by the Court that prohibited counsel from pursuing evidence of inability to pay debts. Indeed, counsel, after the initial reopening of the evidence, noted her intention to ask questions in reference to the debtor's payment of debts in 1984 (transcript p. 77).

Such questions were asked and answered (transcript p. 78). Although counsel may have been surprised at the debtor's principal's response that the debtor was paying its bills, such surprise is not a substitute for evidence. Counsel made· no offer of proof or request for continuance based on any allegation of surprise.

■ Finally, counsel argues that debtor's consent to the involuntary is an admission that the debtor was not paying its debts in the ordinary course of business. However, despite the allegations of the creditor's involuntary petition, the debtor's consent only stated:

> Now comes Furniture Distributors, Inc., (hereinafter "FDI") and answers the Involuntary Petition Under Chapter 7 by consenting that an Order for Relief may be entered against the said FDI and by converting the within Case, pursuant to Section 706(a) of the Bankruptcy Code [11 U.S.C. § 706(a)] to a Case under Chapter 11 of said Code. FDI, however, reserves the right at any subsequent time to·*dispute* the claims of the petitioning creditors or to seek from this Court a change of venue. (emphasis added)

Such an answer cannot be considered an admission of insolvency. Accordingly, counsel had a full opportunity to present evidence of insolvency in the "equity" sense yet failed to prove such a contention. That aspect of counsel's motion must be denied, there being no Court error to correct. Fed.R.Civ.P. 60(b); *see also, Rudolph v. Hunt,* 286 Fed. 1007 (D.C.Cir.), *cert. den.,* 262 U.S. 744, 43 S.Ct. 521, 67 L.Ed. 1211 (1923).

Counsel's second argument is that a review of the evidence and general principles mandates either a reversal of the Court's findings or the reopening of evidence. Aside from the fact that such contentions, at least of reconsideration of the evidence, are better left for appeal, *see* 7 Moore's Federal Practice 59, n. 2 & 3 and accompanying text (2d Ed.1982), the Court cannot agree that any such evidence was before the Court. As noted above, there was no such proof of insolvency in "equity" sense.

Nor was there any proof of insolvency in the "balance sheet" sense. A review of the transcript does not affect any change.

■ As to reopening the proceedings, the Court has reopened the proceedings once before. Despite representations that counsel was "sure" that insolvency could be proven "easily," it was not so proven. In effect, creditor is requesting a "third" bite of the apple. Reopening should not be favored where its purpose is not to correct an obvious error of law or to present newly discovered evidence. *In re Austin*, 26 B.R. 753 (Bankr.S.D.Fla.1983); *In re Devault Manufacturing Co.*, 4 B.R. 382, 85–6 (Bankr.E.D.Pa.1980); *see also, Pignons S.A. de Mecanique v. Polaroid Corp.*, 701 F.2d 1 (1st Cir.1983). To do otherwise, would amount to a waste of judicial resources. *Cf. In re United States*, 666 F.2d 690, 694 (1st Cir.1981).

■ As noted above, there is no error of law, at least in this Court's opinion, that needs to be corrected. As to new evidence, no real new evidence has been suggested by counsel. The motions, petition, and consent were all available and before the Court on the August 8th hearing. Although the debtor's schedules were only recently filed, that is the precise reason the Court originally suggested that the Court hear the matter at a later date. Upon reopening the evidence at the August 8th hearing, counsel could have requested a continued date.[8] The words of one court, dealing with a similar motion, are particularly relevant:

> The proffered evidence includes court records which have been in existence since 1980 in litigation in which the plaintiffs were parties or privies, and the testimony of plaintiffs' attorneys. Movants' excuse for not presenting this material at trial is that they were not aware of the Illinois Agreed Order of Dismissal

entered September 19, 1980 which was the basis of this court's Judgment (C.P. Nos. 10, 11) against movants until the day before trial and that they were unable to obtain court records in time for trial.

However, movants did not seek a continuance at the trial on this or any other ground. Movants apparently elected to seek a judgment in this court based upon a subsequent Florida judgment obtained by them against the debtor. I do not believe that B.R. 759 (which incorporates Rule 59, Fed.R.Civ.P.) permits a litigant to gamble and lose in this manner and then demand a new trial on the ground of newly discovered evidence, nor do I believe that movants could not have discovered the evidence they now seek to introduce had they used due diligence to do so before trial. Wright & Miller, *Federal Practice and Procedure:* Civil § 2808.

*In re Austin*, 26 B.R. 753, 754 (Bankr.S.D. Fla.1983). Perhaps the only new "evidence" is the affidavit of Mr. Rainey, the debtor's principal, supplied as a response to a request for admissions. Here, Mr. Rainey responded that although the debtor had "*generally* ceased to pay its debts in the ordinary course of business," he denied that the debtor "had ceased to pay *all* of its debts in the ordinary course of business" (second emphasis supplied). Although this information would appear to contradict that supplied at the August 8th hearing,[9] counsel should not be heard to complain that she was unable to solicit the desired response to a question. It may be that some of the burden of proof would be supplied by the schedules or the factual development in later cases benefitting from the lessons of this case, but all things must have an end. Counsel made a considered professional determination and, as a matter of strategy, pushed against strenuous op-

---

8. The Court notes that it is generally hesitant to continue matters. However, that does not excuse counsel from requesting a continuance.

9. Q. Were you making payments to your creditors after June 8, 1984?

A. Yes.
Q. And how were you making those payments?
A. Through the monies that were received from the Puritan Furniture operation.

position for an expedited hearing before there was opportunity for discovery or even the filing of schedules—it is not in her mouth to complain because, with hindsight, it was a roll of the dice that came up snake eyes. Further, the Court has already leaned over backwards. It could have simply written its opinion—instead, it told counsel of the problem and provided an opportunity for a second chance. The Court notes, in good conscience, that even if it were to reopen this matter, that counsel would have several obstacles to overcome. As to the matter of "balance sheet" insolvency, counsel had been unable to prove insolvency at the August 8th hearing. The Court has little indication that anything would be different now.

Even assuming insolvency proven, counsel would have avoided only one obstacle. In the case at bar, the debtor's goods may be subject to a security interest of a lender that may have an interest in all of the debtor's property. Mass.Gen.Laws ch. 106 (UCC) § 2–702(3) states:

> (3) The seller's right to reclaim under subsection (2) is subject to the rights of a buyer in ordinary course or *other good faith purchaser* or *lien creditor* under this Article (section 2—403). Successful reclamation of goods excludes all other remedies with respect to them. (emphasis added)

This section has been construed to provide the secured creditor with an interest superior to that of a reclaiming creditor. *In re Bensar Co.*, 36 B.R. 699 (Bankr.S.D.Ohio 1984); *In re Samuels & Co.*, 526 F.2d 1238 (5th Cir.1976), *cert. denied*, 429 U.S. 834, 97 S.Ct. 98, 50 L.Ed.2d 99 (1976); *In re McLouth Steel Corp.*, 22 B.R. 722 (Bankr. E.D.Mich.1982); *In re Bowman*, 25 UCC Rep.Serv. 738 (Bankr.N.D.Ga.1978); *see also, Toyota Industrial Trucks U.S.A., Inc. v. Citizens National Bank of Evans City*, 611 F.2d 465, 473 n. 6 (3rd Cir.1979); 3A R. Duesenberg & L. King, Sales & Bulk

Transfers under the Uniform Commercial Code § 13.03[4][i] at 13–28 (1983). Of course, there is authority to the contrary. *See In re Emery Corp.*, 38 B.R. 489 (Bankr.E.D.Pa.1984). Curiously, these cases primarily focus on whether the secured creditor is a "good faith purchaser" rather than a "lien creditor." However, the Court need not decide this issue of law at this time—the Court merely notes it as one of the relevant issues *if* the evidence were to be reopened *and* insolvency found.

Finally, counsel would have to deal with the issue of possession. In the case at bar, it has been alleged that the debtor has neither possession nor title to the goods in question. Indeed, both the debtor's Opposition to Petitioning Creditors' Motion for the Appointment of an Interim Trustee and Mr. Rainey's Affidavit in support thereof, support such contentions.[10] As noted by Judge Lawless:

> In order to be the object of a reclamation action, goods must be identifiable and in the possession of the debtor on the day of demand. *See In re Flagstaff Foodservice Corp.*, 32 U.C.C.Rep. 1479, 1485 (Bkrtcy.S.D.N.Y.1981); *see also In re Daylin, Inc.*, 596 F.2d 853, 856 (9 Cir.1979). In addition, M.G.L.A. c. 106 § 2–702(2) speaks of the right to reclaim the goods, not the proceeds. *Matter of Samuels & Co., Inc.*, 526 F.2d 1238, 1245 (5 Cir.1976) reh. den. April 1, 1976, *cert. denied* sub. nom. *Stowers v. Mahon*, 429 U.S. 834, 97 S.Ct. 98, 50 L.Ed.2d 99 (1976); *In re Flagstaff, supra* at 1484–1485; *see* M.G.L.A. c. 106 § 2–702(2). It is clear from reading the statute and case law interpretations thereof, that there exists no right to go after the proceeds from the Goods. *Matter of Samuels & Co., Inc., supra; see In re Eli Watt Co.*, 32 U.C.C.Rep. 120, 127 (Bkrtcy.D.Florida 1981); *In re Flagstaff, supra.* (footnotes omitted)

**10.** The opposition notes, in pertinent part, that:
(5) With respect to the FDI Norwood Inventory, said inventory is at the present time in the exclusive control and custody of Puritan.... while the affidavit states:

(15) Your Affiant is informed and believes and therefore avers that [Puritan Furniture Co.], on or after March 16, 1984, breached agreements with FDI, converted its goods and defrauded FDI ....

*In re Landy Beef Co.,* 30 B.R. 19, 21 (Bankr.D.Mass.1983); *see also, In re Coast Trading Co.,* 31 B.R. 667 (Bankr.D.Ore. 1982). Again, however, this is not an issue that the Court need decide at this point in time.

The Motion for Reconsideration, for Amendment of the Findings, or in the Alternative, for a new trial on the Denial of Reclamation Claims is DENIED.