**In re FLAGSTAFF FOODSERVICE CORPORATION, et al., Debtors.**

**Bankruptcy No. 81 B 11430–11436 (PBA).**

United States Bankruptcy Court, S.D. New York.

Aug. 30, 1983.

Raff, Scheider & Wiener, Newark, N.J., for General Electric Credit Corp.

Levin & Weintraub & Crames, New York City, for debtor and debtor-in-possession.

Angel & Frankel, P.C., New York City for Creditors' Committee.

Bruce H. Roswick, New York City, for Western Idaho Potato Processing Co.

Anderson, Russell, Kill & Olick, P.C., New York City for Bruno Scheidt, Inc. and Vlasic Foods, Inc.

Sahn, Luks & Gillman, New York City, for Economy Meats, Inc.

Siegel, Sommers & Schwartz, New York City, for Beatrice Foods.

DECISION AND ORDER ON MOTION OF GENERAL ELECTRIC CREDIT CORPORATION FOR AN ORDER VACATING VARIOUS ORDERS ALLOWING § 546(c) ADMINISTRATIVE CLAIMS

PRUDENCE B. ABRAM, Bankruptcy Judge:

The motion before the court pits the secured lender, General Electric Credit Corporation ("GECC"), against reclaiming sellers who have obtained orders from this court validating their claims. By motion dated December 20, 1982, GECC seeks an order vacating seven orders of this court allowing administration claims to reclaiming sellers. The present motion was made by GECC following a hearing held on December 1, 1982 on an application by the Creditors' Committee for an order directing GECC to refund sufficient funds to the debtors in possession to permit immediate payment of reclamation claims previously fixed by this court including those fixed in the seven challenged orders.

Flagstaff Foodservice Corporation and the other debtors (collectively "Flagstaff") filed petitions for reorganization under Chapter 11 of the Bankruptcy Code on July 21, 1981 and were continued as debtors in possession. At the time of the filings Flagstaff was actively engaged in the institutional food service and distribution business.

At the commencement of the Chapter 11 cases, GECC was owed approximately $22 million and that indebtedness was secured by liens on all or virtually all of the Flagstaff real and personal property, including inventory and accounts receivable. On or about July 21, 1981, Flagstaff obtained a court order authorizing an emergency borrowing arrangement with GECC. On July 29, 1981, the court approved an order authorizing the debtors in possession to borrow from GECC on a secured basis and granting to GECC a super-priority status. The order as submitted had provided for GECC to have a lien superior to any prior or later lien. Certain changes key to the instant motion were made to the order by the court on July 29, 1981. Added to the decretal paragraph which granted GECC super-priority status was the following provision:

"Except for administration claims fixed by court order pursuant to § 546(c)(2) of the [Bankruptcy] Code to which GECC liens and administration claims shall be subordinate."

No appeal was taken from the July 29, 1981 financing order and GECC commenced to lend. No issue is presented on this motion as to the propriety of the subordination of GECC to any administration claims allowed to reclaiming sellers under Bankruptcy Code § 546(c)(2) (the "§ 546(c)(2) claims").

Because of the nature of Flagstaff's business it received numerous reclamation demands. It now appears that GECC will not be paid in full[1] and that the grant of a priority position to the § 546(c)(2) claims in the July 29 order will reduce the amounts available to GECC and thus enlarge GECC's deficiency. The Creditors' Committee has been actively involved on behalf of the reclaiming sellers. In the fall of 1981, the Creditors' Committee filed an application with the court seeking to compel Flagstaff to recognize a number of § 546(c)(2) claims. A determination had previously been made by the court that administration expense status should be given to the reclamation creditors in lieu of reclamation.[2] As a result of the application of the Creditors' Committee, on November 16, 1981, an order was signed on notice to GECC fixing and allowing as administration claims reclamation claims totalling $527,000 and directing that a so-called reclamation fund consisting of weekly deposits of $25,000 from the receivables, which had been pledged to GECC, be established for the payment of the reclamation claims fixed in the order as well as any others fixed by the court.

The present dispute originally arose in summer 1982 when GECC declined to continue to permit Flagstaff to retain the $25,000 per week on the grounds that the recla-

mation fund had reached its maximum required level. GECC's position was that the reclamation fund was to cover only the $527,000 in reclamation claims fixed in the November 16 order and that the fund had reached a level sufficient to pay those claims. At the December 1, 1982 hearing this court indicated that its interpretation of the November 16, 1981 order was that it unequivocally required the deposits to the extent of all allowed reclamation claims, whether allowed in the November 16 order or otherwise.

In light of this interpretation of the November 16 order by the court, GECC undertook to challenge the fixing of so-called "Additional Reclamation Claims" in seven orders. Should this court uphold these orders, GECC will be required to permit Flagstaff to retain monies in the reclamation fund equal to all of the allowed reclamation claims, approximately $960,000, including the $527,000 in claims GECC recognizes as validly fixed in the November 16 order.

■ The court after considering the arguments advanced on behalf of the reclamation creditors whose claims were fixed in the seven disputed orders that the orders are final and the arguments advanced by GECC that the orders are void concludes that the seven orders are not void but neither are they invulnerable to attack. Bankruptcy Code § 502(j), 11 U.S.C. § 502(j), states that

"Before a case is closed, a claim that has been allowed may be reconsidered for cause, and reallowed or disallowed according to the equities of the case."

1. The court assumes for the purposes of this decision that GECC is correct in this regard. However, no determination of the amount of the debt due to GECC or the amount of collateral held is being made at this time.

2. Section 546(c) of the Bankruptcy Code, 11 U.S.C. § 546, allows a seller, who has a statutory or common law right to do so, to reclaim goods received by a debtor while insolvent if demand is made within ten days. Subsection (2) of § 546(c) permits a court to deny reclamation to the seller who meets these requirements only if the court grants the claim of the seller priority as an administrative expense or se-

cures the claim by a lien. In these cases, it has been determined to deny requests for reclamation and to grant administration claims instead. The amount of the administrative claim allowed is the seller's invoice price of the goods on hand at the time the notice was delivered to Flagstaff. Thus, if Flagstaff had on hand only 50 of the 100 units originally delivered, the administration claim is 50 times the unit price, or in this example one-half of the original invoice amount. *See In re Flagstaff Foodservice Corp.*, 14 B.R. 462 (Bkrtcy.Ct.S.D.N.Y.1981). No appeal was taken from this decision and it therefore is the law of the case.

There is no doubt that the seven disputed orders are orders allowing claims and they are thus subject to reconsideration.

The Bankruptcy Code does not establish the procedure for reconsideration of an allowance order. The recently effective Bankruptcy Rules provide as follows in Rule 3008:

"A party in interest may move for reconsideration of an order allowing or disallowing a claim against the estate. The court after a hearing on notice shall enter an appropriate order."

The court sees no prejudice in applying Rule 3008 in this case.[3]

■ GECC is a party in interest, a term not defined in the Bankruptcy Code or Bankruptcy Rules, for the purposes of a motion for reconsideration. Its interest in seeing that the amount of its deficiency is as small as possible gives it a special interest in the amount of the allowed reclamation claims which are a first charge against the assets of the estate. *Cf. In re American Fidelity Corp. Ltd.,* 28 F.Supp. 462, 471–472 (S.D.Cal.1939).

■ The court's reconsideration must be "for cause." Reallowance or disallowance on reconsideration is to be "according to the equities of the case." Bankruptcy Code § 502(j). GECC has asserted several reasons as cause. One, the reclamation creditors were required to, but all but a very few failed to, institute adversary proceedings. Two, GECC received no notice prior to the entry of the seven orders and they are therefore void.[4] Three, the debtors were not insolvent at the time the goods were delivered. Four, GECC does not know whether the goods sought to be reclaimed were on hand at the time the notices were given and whether proper notices were given within ten days.

■ The first and second of these objections are intertwined. GECC seems to be asserting that adversary proceedings were required because of its view that it would have been an indispensable party to such an adversary proceeding. *Ergo,* if adversary proceedings were required and it was an indispensable party in such a proceeding, any order must be void because GECC was not made a party or given notice. The court rejects both parts of this line of reasoning. The filing of an adversary proceeding is not mandatory for a reclamation creditor to receive the treatment afforded by Bankruptcy Code § 546(c). The Bankruptcy Code is silent on the subject of how a § 546(c) right is to be asserted. The court had already determined to deny reclamation and grant an administrative expense claim instead. Bankruptcy Code § 503(a) states that "an entity may file a *request* for payment of an administrative expense" (emphasis added).

The Bankruptcy Rules, both the former rules and the new rules, are to be

"construed to secure the expeditious and economical administration of every case under the Code and the just, speedy, and inexpensive determination of every proceeding therein." Bankruptcy Rule 1001.

Compare Bankruptcy Rule 903 and Federal Rule of Civil Procedure 1. All parties to this case, including GECC, recognized that it would be neither economical nor expeditious to require all of the numerous reclamation creditors to commence adversary proceedings. Therefore, the debtors in possession undertook to review reclamation demands with a view towards their resolution without formal litigation. That was within both the spirit and meaning of the Bankruptcy Code and Rules. An adversary proceeding would be required only in the event no amicable resolution could be reached.

---

3. Interim Bankruptcy Rule 3001(e) applicable as a local rule prior to August 1, 1983, provides that now former Bankruptcy Rule 307 applied in Chapter 11 cases. The substantive difference between Rule 307 and Rule 3008 is that former Rule 307 permitted reconsideration of disallowance orders as well, a matter not in issue in this case.

4. GECC has also challenged the orders on the grounds that the reclaiming creditors did not consent to the orders. This defense must be rejected as it is one belonging solely to the reclaiming creditor. Suffice it to say no reclaiming creditor has challenged any of the seven orders on the grounds of lack of its consent.

*Cf. In re Daylin, Inc.,* 1 B.C.D. 1390 (Bkrtcy. C.D.Cal.1975) (court directed debtor to give notice to all persons making reclamation demands that a complaint for reclamation must be filed by a fixed date.).

▮ Furthermore, while GECC would no doubt be a proper party to an adversary proceeding commenced by a § 546(c) claimant, it was not an indispensable one. Former Bankruptcy Rule 719 captioned "Joinder of Parties Needed for Just Determination," which was then applicable, provides that a party is to be joined if

"(1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the proceeding and is so situated that the disposition of the proceeding in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest."

With the possible exception of the October 1982 order, at the time the disputed orders were signed GECC had never claimed an interest in the fixing of reclamation claims despite the opportunities afforded it to do so. This court has been pointed to nothing from the time the financing order was signed with the critical change respecting reclamation claims until this present motion was made that placed Flagstaff, the Creditors' Committee or the reclamation claimants on notice that GECC claimed an interest in the fixing of the claims. GECC as far as is apparent to this court undertook no review of the documents concerning the reclamation claims fixed in the November 16, 1981 order, its only interest being in the $25,000 fund mechanism. No notice mechanism was established by GECC in either the July 29 or November 16 orders respecting the fixing of reclamation claims. It would have been simple for GECC to indicate its concern. This court must conclude that

GECC in fact did not care to involve itself in fixing the claims until it awoke sometime in the Spring of 1982 to realize that it was confronting a deficiency. GECC has had personnel monitoring Flagstaff throughout the period covered. Moreover, this court fails to understand how a secured party in GECC's position would not in fact have known of the entry of the challenged orders, either through periodic monitoring of the court dockets, or through its regular contacts with Flagstaff personnel. Even after GECC stopped the $25,000 deposits in June 1982, it is not clear that it evinced a interest in the reclamation claims themselves as opposed to its position that the "Additional Reclamation Claims" were not covered by the deposit mechanism.

Nor was GECC's presence required to afford complete relief among the parties. The purpose of an adversary proceeding would have been to fix the claim. The second step, a payment mechanism for the claim as fixed, was already apparently in place with the signing of the November 16 order. As to the fixing of the claim itself, GECC was not a party to the original sale transaction or the reclamation demand and had no personal knowledge to offer. GECC was and still is in the position of an outsider at a card game offering its opinion about the value and play of one of the participant's hands.

A determination of indispensability is to be made on the basis of the facts and circumstances based on equitable considerations. *Rippey v. Denver United States National Bank,* 260 F.Supp. 704, 717 (D.Colo. 1966) (motion to amend). The facts and circumstances in light of the equitable considerations leads to the court's conclusion that GECC was not an indispensable party entitled to prior notice of the seven disputed orders.[5]

Turning to GECC's third point, that the debtors were not insolvent, this court has grave difficulty in understanding how on the one hand GECC claims a deficiency and

---

5. However, in order to avoid further dispute on this point, the court will require that GECC be notified of any future order with respect to a reclamation claim or joined in any adversary proceeding involving a reclamation claim not yet fixed.

on the other that the debtors were solvent, i.e. able to pay all of their pre-petition creditors. Furthermore, a finding of insolvency was necessarily implicit in the fixing of reclamation claims in the November 16 order.[6] However, the court will not foreclose this issue at this time.

As to GECC's fourth and final point, that it does not know what goods were on hand and whether proper notice was given, GECC's motion is merely speculative. There has been no showing that Flagstaff failed to exercise proper judgment or applied inadequate factual or legal standards in consenting to the allowance of the reclamation claims fixed in the seven orders.

It is apparent to the court, however, that GECC did not adduce specific facts in support of these third and fourth points because its principal point, rejected above, was that it was entitled as a matter of law to have the seven disputed orders vacated. Therefore, the court will permit GECC to make a motion to reconsider any of the reclamation claims fixed in the seven orders on the basis of specific facts on the insolvency, demand and quantity on hand issues not later than sixty days from the date hereof. The insolvency issue would present common issues on which a joint trial might be appropriate, as permitted by Bankruptcy Rules 7042 and 9014. The notice and quantity objections present separate factual questions as to each claim, although there may be common questions of law.

The court notes that Bankruptcy Rule 3008 which it will apply to any renewed motion provides for the court to act "after a hearing on notice." In the light of the Bankruptcy Code's mandate that reallowance is to be "according to the equities of the case" and in light of the usual practice on objections, the court will place the burden on GECC to go forward with its objections first to demonstrate that manifest injustice has been done and that there are clear errors in the orders of allowance. In the absence of such a showing, the equities would appear to lie with repose.

In order to afford GECC the specific information it may require to make a reconsideration motion, the court directs Flagstaff to make available to GECC at the offices of Flagstaff or such other place as mutually agreed forthwith such documentation as Flagstaff used to verify the reclamation claims.

It is so ordered.

---

6. This issue is *sub judice* as to one of the debtors. See *Allstate Fabricators Corp. v. Flagstaff Foodservice Corp. and General Electric Credit Corporation*, 81 B 11430–81 B 11436, 82–6286–A.