**In re FLAGSTAFF FOODSERVICE CORPORATION, et. al., Debtor.**

**Bankruptcy Nos. 81 B 11430(PBA) to 81 B 11436 (PBA).**

United States Bankruptcy Court, S.D. New York.

Jan. 15, 1986.

See also 16 B.R. 132, 25 B.R. 844.

Raff, Scheider & Weiner, Newark, N.J., for Gen. Elec. Credit Corp.

Angel & Frankel, P.C., New York City, for Creditors Committee.

George Wilding, Gen. Credit Manager, Englewood Cliffs, N.J., for Best Foods Intern. Plaza.

Levin & Weintraub & Crames, New York City, for debtor in possession.

Robert Fisher, Fisher, Hecht & Fisher, New York City, Trustee.

Anderson, Russell, Kill & Olick, P.C., New York City, for Bruno Scheidt, Inc.

Lanshe, Lanshe & Lanshe, Allentown, Pa., for Stewart Sandwiches, Inc.

Bernstein, Weiss, Coplan, Weinsten & Lake, New York City, for Schoenfeld & Sons, Inc.

Scheider & Arzt, New York City, for Hunter Walton & Co., Inc. and Walker Butter & Egg Co., Inc.

Sahn, Luks & Gillman, New York City, for Economy Meats, Inc.

Siegel, Sommers & Schwartz, New York City, for Beatrice Foods Inc.

Lester A. Lazarus, P.C., New York City, for Seamark, Corp.

Ted Bobbey, Pittsburg, Pa., for Heinz USA.

Guterman, Horvits, Rubin & Rudman, Boston, Mass., for Intern. Ice Cream Corp.

Scheider & Wiener, Newark, N.J., for Western Idaho Potato Processing Co.

Powers & Hall, Boston, Mass., for Slade Gorton & Co., Inc.

Robert M. Vorsauger, New York City, for Amstar Corp.

R.D. Ruiz, Credit Manager, Oakland, Cal., for Clorox Co.

Adler Pollock & Sheehan, New York City, for Juice Services, Inc.

Iannucciclo & Hines, Inc., Providence, R.I., for Roger Williams Food, Inc.

E. Spier, Carlstadt, N.J., for Spear Packing Corp.

Bruce M. Roswick, New York City, for Western Idaho Potato Processing Co.

## MEMORANDUM DECISION AND ORDER

PRUDENCE B. ABRAM, Bankruptcy Judge.

By motion and application filed October 31, 1983 General Electric Credit Corporation ("GECC") sought, in the alternative; (1) the reconsideration of eleven reclamation claims which were previously allowed by various orders of this court, or (2) the vacature of seven orders allowing various sellers' reclamation claims.[1] The gravamen of GECC's application is that the various reclamation demands, which were necessary prerequisites to the allowance of the claims, were either untimely or improper under § 546(c)(1) of the Bankruptcy Code ("Code").[2] The court denied GECC's prior motion asserting that it had an absolute right to have the orders vacated, finding that GECC was not an indispensable party. The court permitted GECC to renew its motion in the form of a motion for reconsideration of the allowed claims and placed the burden on GECC

"to go forward with its objections first to demonstrate that manifest injustice has been done and that there are clear errors in the orders of allowance. In the absence of such a showing, the equities would appear to lie with repose."

*In re Flagstaff Foodservice Corporation,* 32 B.R. 820, 825 (Bankr.S.D.N.Y.1983).

---

[1.] The following are the seven additional orders for which GECC seeks vacatur:

1. Order and Stipulation Allowing Administrative Claim pursuant to § 546(c)(2)(a), dated October 1, 1981, signed by Judge Roy Babitt.
2. Order and Stipulation Allowing Administrative Claim pursuant to § 546(c)(2)(a), dated January 27, 1982, signed by Judge Roy Babitt.
3. Order, dated February 5, 1982, signed by Judge Roy Babitt.
4. Order, dated March 2, 1982, signed by Judge Roy Babitt.
5. Order with Respect to Reclamation Claim of Consolidated Foods Corporation, dated March 29, 1982, signed by Judge Roy Babitt.
6. Order with Respect to Additional Reclamation Creditors, dated April 30, 1982, signed by Judge Roy Babitt.
7. Second Order with Respect to Additional Reclamation Creditors, dated October 26, 1982 signed by Judge Prudence B. Abram. Out of these seven orders only three concern the eleven claims for which GECC seeks reconsideration. These three orders are:
   (1) Order of March 2, 1982, allowing the claim of Hunter Walton Co.
   (2) Order of April 30, 1982, allowing the claims of; Amstar Corporation, Best Foods, Clorox Co., Hormel, Juice Services, Inc., and Nestle Co.
   (3) Order of October 26, 1982 allowing the claims of; Admiral Foods, Inc., Idle Wild Farms, Slade Gorton and Stewart Sandwich Service, Inc.

[2.] Insolvency, timely written demand, and quantity on hand are all essential elements in establishing a valid reclamation claim. See *In re Coast Trading Company, Inc.,* 744 F.2d 686 (9th Cir.1984); *In the Matter of Marin Motor Oil, Inc.,* 740 F.2d 220 (3d Cir.1984); *In re Koro Corporation,* 20 B.R. 241 (Bankr. 1st Cir.1982), affirming 10 B.R. 767 (Bankr.D.Ma.1981); *In re Matter of Bensar Company, Inc.,* 36 B.R. 699 (Bankr.S.D.Ohio 1984); *In re Maloney Enterprises, Inc.,* 37 B.R. 290 (Bankr.E.D.Ky.1983); *In re Matter of Flagstaff Foodservice Corporation,* 14 B.R. 462 (Bankr.S.D.N.Y.1981). Furthermore, the prevailing view is that § 546(c) of the Bankruptcy Code is the exclusive remedy for the reclaiming seller. See *In re Furniture Distributors, Inc.,* 45 B.R. 38 (Bankr.D.Mass.1984); *In re HRT Industries, Inc.,* 29 B.R. 861 (Bankr.S.D.N.Y.1983); *In the Matter of Deephouse Equipment Company, Inc.,* 22 B.R. 255 (Bankr.D.Conn.1982).

On July 21, 1981 Flagstaff Foodservices Corporation and related companies [3] (collectively "Flagstaff") filed petitions for reorganization under Chapter 11 of the Code and were continued as debtors in possession. Subsequently, on June 28, 1984, an order was signed converting the cases to Chapter 7 and a Chapter 7 Trustee was appointed. At the time of the filing, Flagstaff was in the business of institutional food service and distribution.

Flagstaff, at the commencement of the Chapter 11 filings, was indebted to GECC in the amount of approximately $22,000,000. This debt arose from various pre-petition financing arrangements between Flagstaff and GECC. This debt was secured by liens on virtually all of Flagstaff's real and personal property, including accounts receivable.

On the date of the filing Flagstaff obtained a court order authorizing an emergency borrowing arrangement with GECC. This order permitted Flagstaff to use up to $750,000 of GECC's collateral for the limited period of five days. Subsequently, on July 29, 1981, the court entered an order ("Financing Order") authorizing Flagstaff to enter into a credit arrangement with GECC, in which Flagstaff could borrow on a secured basis. The order provided, *inter alia,* that GECC would have a lien superior to any prior or later lien "except for admin-

istrative claims fixed by court order pursuant to § 546(c)(2) of the Code, to which GECC liens and administration claims shall be subordinate." The Financing Order also provided that GECC would have a qualified super-priority status as to sums not secured under the agreement. No appeal was taken from the July 29 Financing Order and GECC commenced its lending pursuant thereto.[4]

Due to the nature of the institutional food business, Flagstaff received numerous reclamation demands. Instead of providing GECC with the voluminous records of Flagstaff, which were necessary to evaluate each claim, Flagstaff itself carefully reviewed each reclamation claim.

In the fall of 1981, the Committee of Unsecured Creditors ("Creditors' Committee"), acting on behalf of the reclaiming sellers, filed an application which sought to compel Flagstaff to recognize a number of § 546(c)(2) claims.[5] As a result of this application, the court signed an order on November 16, 1981, fixing and allowing as administrative claims, reclamation claims. This order was signed on notice to GECC.

In order to pay the reclamation claims, which at that point in time totalled approximately $527,000, the court directed that a reclamation fund be created. This fund was expressly established to pay any recla-

**3.** Besides Flagstaff Foodservice Corporation, several of its affiliates also filed under Chapter 11 on the same date. By order signed July 21, 1981, the following debtors were consolidated for procedural purposes:

—Flagstaff Foodservice Corporation,
—Flagstaff Foodservice Co. of New England, Inc.,
—Flagstaff Foodservice Co. of Connecticut, Inc.
—Flagstaff Foods Corp.,
—Flagstaff International, Inc.,
—Marlboro Freezers, Inc., and
—A. Peltz & Sons, Inc.

**4.** Although not the subject of direct appeal, the lending arrangement with GECC has resulted in two decisions by the Second Circuit Court of Appeals. See *In re Flagstaff Foodservice Corporation (General Electric Credit Corp. v. Levin & Weintraub, et al.),* 739 F.2d 73 (2d Cir.1984) (Flagstaff I) (Attorneys not entitled to payment from GECC's collateral because services were

not for the benefit of GECC) and *In re Flagstaff Foodservice Corporation (General Electric Credit Corporation v. Peltz, et al.),* 762 F.2d 10 (2d Cir.1985) (Flagstaff II), *reversing district court's affirmance* of 29 B.R. 215 (Bankr.S.D.N.Y.1983) (GECC's superpriority security interest would not be subordinated to outstanding payroll taxes incurred during Chapter 11 absent proof of direct benefits received by GECC or GECC's consent).

**5.** Section 546(c) of the Bankruptcy Code allows a seller, who has a statutory or common law right to do so, to reclaim goods received by the seller while such seller was insolvent, if a written demand is made within ten days. § 546(c)(2) permits a court to deny reclamation to a seller who meets these requirements only if the court grants the claim of the seller priority as an administrative expense or secures the claim by a lien. In these cases, reclamation has been denied and administration claims granted instead.

mation claims allowed by the November 16 order or any later reclamation claims fixed by the court. Pursuant to the order, $25,-000 was deposited weekly, from receivables, to provide money for this fund. Such receivables were pledged to GECC. However, pursuant to the Financing Order, GECC's interests were subordinated to those of the reclaiming sellers. Subsequently, in a series of seven orders ("Additional Orders") entered by the court, numerous additional reclamation claims were fixed.[6]

Apparently realizing the possibility that it would not be paid in full, GECC declined to permit Flagstaff to continue to remit the weekly payments to the reclamation fund. GECC's position was that the reclamation fund was to cover only the $527,000 in reclamation claims fixed by the November 16 order and that the fund had reached this maximum level. The present motion follows the court's indication at a hearing held December 1, 1982 that its interpretation of the November 16 order was that the order unequivocally required the weekly deposits to the extent of all allowed reclamation claims, whether fixed in the November 16 order or otherwise.

On October 31, 1983, GECC filed an application in which it prayed for the entry of (a) an order reconsidering and modifying or vacating the seven Additional Orders to disallow some eleven claims fixed in those orders, or in the alternative, (b) an order vacating all of the seven Additional Orders. It is upon this motion and application for reconsideration that the court must now rule.

It is clear that the bankruptcy court generally may reconsider its prior orders. Bankruptcy Rule 3008. *See also Brielle Associates v. Graziano*, 685 F.2d 109, 111 (3d Cir.1982); *In re Brendan Realty Associates, Inc.*, 372 F.2d 235, 238–39 (2d Cir. 1967). With regard to allowance of claims, the court is specifically empowered to reconsider its prior orders. However, such reconsideration must be for cause "according to the equities of the case". Bankrupt-

cy Code § 502(j). *See also In re Flagstaff Foodservice Corp.*, 32 B.R. 820, 823 (Bankr.S.D.N.Y.1983); *Karen-Richard Beauty Salon, Inc. v. Fontainebleau Hotel Corp.*, 36 B.R. 896, 898 (Bankr.S.D.Fla. 1983).

What exactly constitutes cause according to the equities of the case is not entirely clear. Thus, the determination of whether or not to reconsider falls upon the equitable judgment of the court and is within the sound discretion of the court. *See S.E.C. v. Salmon & Company, Inc.*, 375 F.Supp. 867, 869 (S.D.N.Y.1974).

In its motion and application for reconsideration GECC does not adduce any facts which place in issue either the solvency of Flagstaff or the amount of goods on hand at the time of demand. Instead GECC advances two contentions, only the second of which goes to the core issues:

(1) GECC is an indispensable party which did not receive notice of hearing, notice of settlement, a proposed order or notice of adversarial proceeding, relative to the seven Additional Orders and that such orders should be vacated because GECC had no opportunity to participate in any hearing with respect to said orders.

(2) Eleven of the reclamation claims, allowed in the Additional Orders, were based on demands which were either untimely and/or improper under § 546(c), and thus, such claims should be disallowed.

GECC's first assertion was fully addressed by this court in its prior memorandum decision and order. See *In re Flagstaff Foodservice Corp., supra*, 32 B.R. 820. Suffice it to say that the court concluded, in part, that although GECC was a party in interest, it was not an indispensable party. Accordingly, the court held that it was not necessary that GECC be given notice of any hearings, settlement or proceedings relative to the seven Additional Orders. Furthermore, the court stated

---

**6.** See footnote 1.

that in addition GECC had failed to indicate its concern by requesting that a notice requirement be placed in either the July 29, 1981, or the November 16, 1982 orders.

In its second main assertion, GECC contends that out of the eleven disputed claims, eight are untimely and three are improper. Pursuant to § 546(c)(1) of the Code, a seller who has a statutory or common law right to do so, may reclaim goods sold to a debtor, if the debtor received such goods while insolvent.[7] However, "such a seller may not reclaim any such goods unless such seller demands in writing reclamation of such goods before ten days after receipt of such goods by the debtors.[8]

■ In the determination of whether or not a written demand is timely, the date that the debtor receives the goods in its physical possession is the starting point for the running of the ten-day time limit mandated by § 546(c). *In the Matter of Marin Motor Oil, Inc.,* 740 F.2d 220, 224–25 (3d Cir.1984); *In re Maloney Enterprises, Inc.,* 37 B.R. 290, 292 (Bankr.E.D.Ky.1983). In computing time under the Code Rule 9006 of the Rules of Bankruptcy Procedure ("Bankruptcy Rules") is employed. Rule 9006(a), in pertinent part, states that:

> "In computing any period of time prescribed or allowed by these rules, by the local rules, by order of court, or by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, in which event the period runs until the end of the next day which is not a Saturday, a Sunday, or a legal holiday."

Thus, a seller may make a successful reclamation demand during the ten-day period commencing the day after the debtor receives the goods.

After determining the time period in which a proper demand may be made, it must then be determined when such a demand was made. If made within the ten-day period, the goods may be successfully reclaimed from the debtor.[9] Cf. *In re Sider Ventures & Services Corp. (Eisenberg v. J L International, Ltd.),* 33 B.R. 708, 710 (Bankr.S.D.N.Y.1983), *affirmed on other grounds,* 47 B.R. 406 (S.D.N.Y.1985).

**7.** A common law right to reclaim goods is found in § 2–207 of the Uniform Commercial Code. "The purpose of [§ 546(c) ] is to recognize, in part, the validity of section 2–702 of the uniform Commercial Code, which has generated much litigation, confusion, and divergent decisions in different circuits." S.Rep. No. 95–989, 95th Cong., 2d Sess. 86–7 (1978); H.Rep. No. 95–595, 95th Cong., 1st Sess. 371–2 (1977), U.S.Code Cong. & Admin.News 1978 pp. 5787, 5872–5873, 6327, 6328.

**8.** § 546(c) states that:

> "The rights and powers of the trustee under sections 544(a), 545, 547 and 549 of this title are subject to any statutory right or common-law right of a seller, in the ordinary course of such seller's business, of goods to the debtor to reclaim such goods if the debtor has received such goods while insolvent, but—
> (1) such a seller may not reclaim any such goods unless such seller demands in writing reclamation of such goods before ten days after receipt of such goods by the debtor; and

> (2) the court may deny reclamation to a seller with such a right of reclamation that has made such a demand only if court—

(A) grants the claim of such a seller priority as an administrative expense; or
(B) secures such claim by a lien.

**9.** The time of demand is important for purposes other than the determination of its timeliness. The demand additionally serves as notice to the debtor that a reclamation demand is being made and that the goods covered by such a demand should not be disposed of in any way. Under § 546(c)(1) of the Code, a seller's reclamation rights extend to the goods in the debtor's possession at the time that notice of the demand was received and not to the proceeds from the sale of such goods. *In re Coast Trading Company, Inc..* 744 F.2d 686, 691 (9th Cir.1984); *In the Matter of Bensar Company, Inc.,* 36 B.R. 699, 701 (Bankr.S.D.Ohio 1984). Where a court grants a seller priority as an administrative expense in lieu of granting a reclamation claim, pursuant to § 546(c)(2) of the Code, the amount of the administrative claim allowed is the seller's invoice price of the goods on hand at the time the notice was received by the debtor. *In re Flagstaff Foodservice Corporation,* 32 B.R. 820, note 2 (Bankr.S.D.N.Y.1983); *In re Flagstaff Foodservice Corporation,* 14 B.R. 462, 466–67 (Bankr.S.D.N.Y.1981).

The Code does not define what constitutes a "demand" and through research has uncovered only a single case which addressed the issue in relation to the 10-day requirement. The lone case which discusses this issue is *In the Matter of Marin Motor Oil, Inc.,* 740 F.2d 220, 226 (3d Cir.1984).

■ The court in *Marin,* addressing the issue as a case of first impression, held *inter alia* that a § 546(c) demand for reclamation, so long as it is commercially reasonable, is effective, not on receipt by the debtor, but upon dispatch by seller. 740, F.2d at 228. The *Marin* court reasoned that such a dispatch rule would advance both the evidentiary purpose behind § 546(c) and the congressional policy of certainty. *Id.* at 227–28. This court is of the opinion that the reasoning of the *Marin* decision is sound and thus adopts the so-called dispatch rule.

After carefully reviewing all the papers and exhibits submitted, both in support of and opposition to GECC's motion for reconsideration, the court will now rule thereon.

## GECC's ASSERTIONS OF UNTIMELY DEMAND

Of the eight claims for which GECC asserts untimeliness seven may be ruled upon solely by a mechanical application of Rule 9006(a) and the so-called dispatch rule.

### Amstar Corporation

Amstar Corporation's ("Amstar") claim was fixed at $1,950.80 by order dated April 30, 1982. It appears that the merchandise sought to be reclaimed by Amstar, was received by Flagstaff on July 10, 1981. Demand for reclamation was sent via telegram, by Amstar, on July 20, 1981. This telegram was later stamped "received July 31, 1981 Robert Ronnenberg".[10] GECC asserts that the demand was untimely.

### Best Foods

Best Foods' claim was fixed at $6,831.75 by order of April 30, 1982. Apparently, the goods in issue were shipped to Flagstaff on July 13 and July 16, 1981, under 4 separate invoices, and were received by Flagstaff

sometime thereafter. Best Foods then sent a demand for reclamation, by telegram, on July 20, 1981.

In disputing this claim, GECC asserts that Flagstaff did not receive the goods in question on July 13 and July 16, but in fact on July 9 and July 10. GECC seems to base this assertion upon the fact that the bills of lading were stamped "received July 9, 1981 Ridgefield D/C". What this stamp actually affirms is that the goods were received by Ridgefield Distribution Center, which was apparently an agent of Best Foods. The goods were then delivered to Flagstaff on July 13 and 16.

### Clorox Company

Clorox Company's ("Clorox") claim was fixed at $2,565.30 by order dated April 30, 1982. On July 20, 1981 a reclamation demand was sent, via Telex, from Clorox to Flagstaff.

Although the invoice for the goods in issue states the shipping date to be July 10, it is apparent that the goods were in fact interlined with an independent carrier, Forwarders-Motor Transportation. The goods were actually received by Flagstaff on July 15.

GECC asserts that Flagstaff received the goods on July 10 and received the demand on July 21, and therefore the demand was not timely.

### Idle Wild Farms

The claim of Idle Wild Farms ("Idle Wild") was fixed at $21,707.41 by order dated October 26, 1982. Apparently on July 17, 1981, Idle Wild made a demand for reclamation upon Flagstaff, by letter. This letter demanded the immediate return of all goods shipped from July 7 to July 16.

The letter indicated that shipments were made as follows:

| Date Shipped | Invoice Total |
| --- | --- |
| July 7, 1981 | $1,210.00 |
| July 7, 1981 | 99.00 |
| July 7, 1981 | 7,194.00 |
| July 7, 1981 | 2,277.00 |
| July 8, 1981 | 8,540.50 |
| July 13, 1981 | 6,462.11 |
| July 14, 1981 | 375.30 |
| July 16, 1981 | 1,055.94 |

---

**10.** Mr. Ronnenberg is the vice-president and controller of Flagstaff Foodservice Corporation.

Additionally it is stamped "Jul 21 1981".

GECC asserts that because Flagstaff received the demand on July 21, 1981, the demand was untimely with regards to the July 7 and July 8 invoices and that the demand should be reduced by at least $19,320.50.

### Stewart Sandwich Service, Inc.

The claim of Stewart Sandwich Service, Inc. ("Stewart Sandwich") was fixed at $1,031.69 by order of October 26, 1982. On July 20, 1981 Stewart Sandwich sent to Flagstaff, a letter demanding reclamation. This demand sought the return of all goods which were received from Stewart Sandwich, by Flagstaff, on July 10 and 13, 1981.

In disputing this claim GECC's main assertion is that there is no proof of timely written demand in that there is no proof as to when the demand was received.

### Hunter Walton & Co.

The claim of Hunter Walton & Co., Inc. ("Hunter Walton") was fixed at $300.00 by order of March 2, 1982. It is apparent that Flagstaff received the goods which were sought to be reclaimed on July 15, 1981. On July 27, 1981 written demand was made by a letter sent to Flagstaff by Scheider & Artz, attorneys for Hunter Walton. GECC asserts that the demand was untimely.

### Slade Gorton

Slade Gorton's claim was fixed at $337.00 by order dated October 26, 1982. On July 20, 1981 Slade Gorton made a written demand for reclamation, by telegram. This telegram was addressed to Levin & Weintraub, attorneys for Flagstaff and demanded the return of all goods delivered to Flagstaff on July 9, 1981.

In disputing this claim, GECC advances 2 key assertions; (1) the demand was improper because it was not sent directly to Flagstaff,[11] and (2) the demand was untimely.

GECC's key assertion in the seven previous claims is that the respective sellers did not make a timely demand as set forth in § 546(c)(1).

In determining the timeliness of the respective claims, the dispatch rule is employed. Such a rule is used because GECC advanced no allegation of fact which even suggested that any of the demands were made in a commercially unreasonable manner. See *In the Matter of Marin Motor Oil, Inc.*, 740 F.2d 220, 228 (3d Cir.1984). The court must therefore assume that the demands were made in a commercially reasonable manner. *In re Flagstaff Foodservice Corporation*, 32 B.R. 820, 825 (Bankr. S.D.N.Y.1983) (absent a showing otherwise by the movant, the equities would appear to lie with repose). Under Rule 9006(a) and the dispatch rule it is clear that the demands made by Amstar, Best Foods, Clorox, Idle Wild and Stewart Sandwich were timely.[12] There has been no showing sufficient to warrant any inference that the quantity determinations were made on any basis other than quantity on hand at time demand received. See *In re Flagstaff Foodservice Corp. (McCain Foods, Inc. v. Flagstaff Foodservice Company of New England, Inc.)*, 14 B.R. 462, 463 at note 4 (Bankr.S.D.N.Y.1081) (Seller of frozen fried potatoes entitled to reclamation under Code § 546 only to extent that the foodstuffs were in debtor's possession on date of seller's demand for reclamation). Accordingly, with respect to these claims, the motion for reconsideration is denied.

11. This assertion need not be considerate at this point in time because there are other grounds for which to vacate the order in regards to the Slade Gorton claim.

12.

| | Date of Receipt of Goods | 10–Day Time Period * | Date of Demand |
|---|---|---|---|
| Amstar | July 10 | July 11–20 | July 20 |
| Best Foods | July 13 | July 14–23 | July 20 |
| | July 16 | July 17–26 | July 20 |
| Clorox | July 15 | July 16–25 | July 20 |

| | Date of Receipt of Goods | 10–Day Time Period * | Date of Demand |
|---|---|---|---|
| Idle Wild | July 7 | July 8–17 | July 17 |
| | July 8 | July 9–18 | July 17 |
| | July 13 | July 14–23 | July 17 |
| | July 14 | July 15–24 | July 17 |
| | July 16 | July 17–26 | July 17 |
| Stewart Sandwich | July 10 | July 11–20 | July 20 |
| | July 13 | July 14–23 | July 20 |
| Hunter Walton | July 15 | July 16–25 | July 27 |
| Slade Gorton | July 9 | July 10–19 | July 20 |

(* Inclusive)

It is likewise clear that the demands made by Hunter Walton and Slade Gorton were not within the ten-day time period as mandated by § 546(c)(1)[13] and that the orders allowing these claims be vacated. Apparently Hunter Walton and Slade Gorton made their demands upon Flagstaff on the twelfth and eleventh days, respectively. See Rule 9006(a) of the Bankruptcy Rules.

In the following claim GECC again asserts the untimeliness of the seller's demand, however, unlike the preceding seven claims, a ruling cannot be made by merely applying Rule 9006(a) and the dispatch rule. The court must also exercise its equitable powers pursuant to § 502(j) of the Code.

*Nestle Company*

The claim of Nestle Company ("Nestle") was fixed at $3,200.00 by order dated April 30, 1982. On July 20, 1981 Nestle sent written demand to Flagstaff by both mailgram and registered letter.

GECC's key assertion in regards to this claim is that the demand was not made within the ten-day time limit set forth in § 546(c)(1) of the Code. In support of its assertion GECC makes no allegation of fact which tends to prove untimeliness of the demand. Instead GECC merely argues that because the invoices were practically unreadable, there was no proof as to when Flagstaff received the goods. This assertion apparently ignores the court's previous memorandum decision and order which specifically placed the burden upon GECC to advance sufficient grounds justifying reconsideration. *In re Flagstaff Foodservice Corporation, supra*, 32 B.R. at 825. In that decision the court specifically placed the impetus upon GECC to "demonstrate that manifest injustice has been done and that there are clear errors in the orders of allowance." *Supra* at 825. This court is of the opinion that GECC has failed to meet this burden. Clearly GECC did not advance any new allegation of fact which would indicate manifest injustice or clear error. Accordingly, with respect to Nes-

tle's claim, the motion for reconsideration is denied.

## GECC's ASSERTIONS OF IMPROPER DEMAND

In regards to the remaining three disputed claims, GECC asserts that the demands for reclamation were, in some manner improper.

*Hormel*

Hormel's claim was fixed at $5,700.00 by order dated April 30, 1982. Apparently the goods in issue were received by Flagstaff on July 13 and 17, 1981. On July 20, 1981 Hormel, by telegram, made a reclamation demand. This telegram, however, was sent to Levin & Weintraub, attorneys for Flagstaff, instead of directly to Flagstaff.

GECC asserts that such a demand is improper under § 546(c)(1) of the Code. Contrary to GECC's assertion, this court is of the opinion that the demand on the debtor's attorneys is not improper. For the purposes of a reclamation action this court finds nothing in either the case law or the language of § 546(c) which precludes the possibility that a demand made upon a debtor's attorney cannot constitute a demand upon the debtor itself. "The rule may be stated generally that, where a notice pertains to the transaction in which an attorney is acting for the client, the knowledge so obtained is imputed to the principal." *Application of Savoy*, 232 N.Y.S.2d 396, 397 (S.Ct.1962). See also Agency and Independent Contractors § 236 1980, 3 N.Y.Jur.2d. In such an instance the attorneys would be considered the agent for the debtor.

Levin & Weintraub are in fact the attorneys representing Flagstaff in their bankruptcy proceedings. Additionally Hormel's telegram clearly indicates that the reclamation demand was being made on Flagstaff. Thus, it is the opinion of this court that the demand addressed to Levin & Weintraub is as effective as if it had been sent directly to Flagstaff itself.

---

**13.** See *supra* note 12.

*Juice Services, Inc.*

The claim of Juice Services, Inc. ("Juice Services") was fixed by order dated April 30, 1982. Juice Services hand delivered a written demand to Flagstaff on July 20, 1981. The demand sought the reclamation of goods that were apparently delivered to Flagstaff on the ninth, tenth, sixteenth and seventeenth of July. The court, in the April 30 order, fixed Juice Services claim at $5,351.90, the aggregate of the July 16 and 17 deliveries.

In disputing this claim, GECC's main assertion is that the demand was improper because it was not sent by registered or certified mail. Additionally, GECC asserts that there is no proof of when the demand was received.

Nowhere, in § 546(c) or in any case that the court has found is there even an indication that a demand for reclamation must be made by registered or certified mail. Taken literally, § 546(c) only require that the demand be in writing within ten days of receipt of goods.

Furthermore, GECC has not presented any allegation of fact or law which even tends to show that allowance of a claim based on a hand delivered demand is manifestly unjust.

Clearly GECC fails to meet the burden, placed on them by the court, of demonstrating reasonable cause justifying reconsideration. Accordingly the motion for reconsideration in regards to the Juice Services claim, is denied.

*Admiral Foods, Inc.*

The claim of Admiral Foods, Inc. ("Admiral") was fixed at $4,881.85 by order dated October 26, 1982. The goods sought to be reclaimed were apparently received by Flagstaff on July 17, 1981. On July 21, 1981 Admiral sent a demand via mailgram to Flagstaff, however, this demand was sent in the name of Darby Foods Corp., not Admiral. Furthermore, instead of listing the return address of Admiral, the address of Admiral's attorney was given. A second telegram was apparently sent by Admiral correcting these errors but no copy has been supplied to the court.

GECC's main assertion is that the first demand was improper. The court is persuaded by GECC's contention that this constitutes an improper demand. It gives no notice to Flagstaff that certain goods may be subject to reclamation.[14] As no details of the second telegram have been supplied it cannot be considered, and it is therefore the opinion of this court that GECC has sufficiently demonstrated a manifest injustice in the allowance of Admiral's claim, and accordingly, in regards to this claim, the motion for reconsideration is granted.

### CONCLUSION

For the reasons stated above the court concludes that reconsideration is appropriate only in regards to the claim by Admiral Foods. In addition the facts dictate that the orders, in regards to the Hunter Walton and Slade Gorton claims, be vacated. As for the eight remaining disputed claims; Amstar, Best Foods, Clorox, Idle Wild, Nestle, Stewart Sandwich, Hormel and Juice Services, the motion for reconsideration is denied.

It is so ordered.